Joseph Hull **CROCKETT, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 172–90.

Court of Criminal Appeals of Texas, En Banc.

Feb. 6, 1991.

---

David M. Eisen, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Kimberly Aperauch Stelter and Mark Ellis, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Appellant was charged with possessing marihuana in violation of the Controlled Substances Act, Art. 4476–15, § 4.051(a), V.A.C.S.[1]  Before trial he sought to suppress the physical evidence, a suitcase containing approximately nineteen pounds of marihuana, alleging that it was seized in violation of rights secured to him by the Constitutions of Texas (Art. I, § 9) and the United States (Fourth Amendment).  The trial judge ordered a full evidentiary hearing on the question, during which the following story emerged.

1.  *See now* V.T.C.A., Health and Safety Code,  § 481.121(a).

On February 21, 1989, Officers Rodriguez and Corley of the Houston Police Department were "looking for narcotics" at the Amtrak station. Around 8:20 in the morning, while "monitoring" trains bound for Chicago, they saw a blue Oldsmobile stop in front of the lobby. A woman disembarked, entered the station, and stood in line to purchase tickets. Appellant and the driver remained outside. Soon the driver also entered the lobby and, after looking around for a minute, found the public restroom, which he visited for a short time before rejoining appellant in the car.[2]

Before long, the two men removed three items of luggage from the trunk. Appellant carried them into the lobby, and the other man drove away "without saying a word."[3] By this time the woman had purchased two tickets for Chicago with more than $900 in cash. She and appellant spoke for a moment and then walked together with their luggage toward the boarding gate. As they left the lobby, the woman was walking about 10 or 15 feet ahead of appellant.[4] Rodriguez and Corley approached on foot.

After identifying himself as a police officer, Rodriguez asked to speak with appellant, and the latter agreed. In response to questioning appellant disclosed that he was bound for Fayetteville, North Carolina. He advised Rodriguez that his train was scheduled to leave the station in less than 15 minutes, and he was worried about missing it. Rodriguez then asked him for some identification. Appellant seemed nervous, but managed to produce a driver's license. Finally, Rodriguez revealed that he was

there to investigate narcotics traffic, and wondered whether appellant might be carrying illegal drugs in his luggage. Appellant replied that he was not. Rodriguez asked if appellant would mind his searching the bags to be sure. Appellant then demanded to know whether the officer had a search warrant. Rodriguez responded that he did not, but asserted that he had the right to detain appellant long enough for a dog to "smell your bags."[5]

At this point appellant agreed to move his luggage to an area indicated by Rodriguez.[6] A few minutes later, Officer Corley arrived with a trained dog. The dog responded to all three pieces of luggage in such a way that the officers believed each to contain narcotics. When the bags were opened, Rodriguez and Corley discovered a black garbage sack containing a "large bundle" of marihuana in appellant's suitcase. No illegal drugs were found in the other bags.

■ The trial judge overruled appellant's motion to suppress the marihuana, and the Fourteenth Court of Appeals affirmed. *Crockett v. State*, 1990 WL 2957 (Tex.App.—Houston [14th Dist.] 1990). In an unpublished opinion, the Court held that "appellant's behavior after he was approached by the officer, viewed in the totality of the circumstances surrounding the period he and the other man and woman were observed, constituted reasonable suspicion of criminal activity[.]" 1990 WL 2957 *2. We granted appellant's petition for discretionary review to elaborate the legal require-

---

**2.** Officer Rodriguez described the man's behavior as "scoping the lobby for unknown purposes."

**3.** According to Rodriguez, "[t]his is not the normal fashion for a friend dropping you off that they would not have a conversation with you."

**4.** Rodriguez believed that "[n]ormally people traveling together would walk with each other talking about the trip."

**5.** Whether "the canine sniff" is a search within the meaning of the Texas Constitution, Art. I § 9, is not an issue in the instant cause. Under the United States Constitution it is not. *United*

*States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

**6.** Rodriguez testified that, if appellant had summarily declined to speak with him, he would have been permitted to board the train without further detention. In fact, he testified that appellant and the woman were both free to leave "until the dog hit on their bags." But, from the point Rodriguez approached appellant, the baggage itself was not free to leave. Thus, although the issue of "seizure" is not before us, we accept without authoritatively deciding that appellant's luggage, at least, was seized under those provisions of the Texas and United States Constitutions with which we are here concerned.

ment of reasonable suspicion in this context.[7]

■ It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Nevertheless, even a temporary detention of this kind is not permissible unless the circumstances upon which the officers rely objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Cr.App.1983).

■ Appellant contends in effect that his behavior could not have been suspicious because it was perfectly lawful. But such circumstances as will raise suspicion that illegal conduct is taking place need not be criminal in themselves. Rather, they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be. *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1586–1587, 104 L.Ed.2d 1 (1989). The threshhold question is merely one of relevancy.

■ The State asserts that the presence of any relevant evidence on the question is enough to justify the kind of intrusion upon appellant's freedom as occurred here.[8] However, the evidence must be more than merely relevant; it must be of sufficient probative strength to support a reasonable suspicion of criminal misconduct. *Brem v. State,* 571 S.W.2d 314, 318 (Tex.Cr.App.1978). The degree of confidence necessary for such belief varies according to the level of interference with individual liberty and the extent to which effective law enforcement depends upon such interference. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Minor intrusions which measurably further imperative public interests in law enforcement require relatively less confidence of wrongdoing than do more extensive intrusions which advance law enforcement interests but little. At a minimum, however, the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them. *Brown,* 443 U.S. at 52, 99 S.Ct. at 2641.

Under the facts reflected in the record of this case, we do not agree that appellant's conduct justified this level of assurance.[9] Our own intuitions about ordinary human behavior furnish no sound basis for such confidence, and the record reflects neither experiential nor experimental evidence for a conclusion that suspicion is well-founded under these circumstances. *Cf. United States v. Cortez,* 449 U.S. 411, 101 S.Ct.

---

7. It is established that a temporary detention of luggage to allow olfactory inspection by police dogs trained to detect the odor of illegal drugs is not offensive to the Fourth Amendment when based upon reasonable suspicion that the luggage contains narcotics. *United States v. Place, supra.* The amount of evidence necessary to support reasonable suspicion in this context has not yet been addressed by the Supreme Court. *See Place,* 462 U.S. at 699, n. 1, 103 S.Ct. at 2640 n. 1.

8. We have not been called upon to address, nor do we address, the question whether intrusion upon appellant's liberty in this case was greater than that contemplated by *Terry.* The balancing test of *Terry* and its progeny apply only

to seizures falling "far short of the kind of intrusion associated with an arrest." *Dunaway v. New York,* 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979).

9. To be distinguished is *Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984), in which suspects at the Miami Airport actually attempted to flee when their objectively furtive behavior was observed by undercover officers. The Supreme Court held such conduct to be reasonably suspicious, justifying a brief investigative detention of the suspects for questioning in the airport terminal. *See also United States v. Sharpe,* 470 U.S. 675, 682 n. 2, 105 S.Ct. 1568, 1573 n. 2, 84 L.Ed.2d 605 (1985).

690, 66 L.Ed.2d 621 (1981).[10] The State urges us to accept the conclusion that travel to the city of Chicago, using cash to purchase tickets, looking around the train station lobby, speaking little with one's traveling companions, and becoming nervous when involuntarily detained in public by narcotics investigators supports an inference of wrongdoing. We fail to see how this is so, and the testimony provides no illumination.[11] Indeed, the record is devoid of any evidence remotely tending to suggest, as an empirical matter, that persons traveling to Chicago are more likely to be transporting illegal drugs than are persons traveling elsewhere. No testimony indicates that drug dealers make cash purchases more frequently than do other people, that they talk less with their friends, view their surroundings more, or become uncommonly nervous when stopped by the police.

The past decade has witnessed a rather dramatic change in the Supreme Court's attitude toward investigative detention of interstate travelers. The separate opinions filed in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), evince considerable disagreement among the Justices regarding reasonableness of police suspicion under circumstances much like those with which we are here concerned. In *Mendenhall*, unlike the instant cause, Drug Enforcement Agents supported the objectivity of their suspicions with testimony, apparently based on personal experience, that drug couriers often behave in the way their suspect did in that case. 446 U.S. at 564–565, 100 S.Ct. at 1882–1883 (Powell, J., concurring). Yet a majority of those Justices expressing an opinion on the question believed in *Mendenhall* that police suspicions were not reasonable under the circumstances, even in light of the officers' training and experi-

ence. 446 U.S. at 571–573, 100 S.Ct. at 1886–1887 (White, J., dissenting). A like rationale controlled disposition of nearly identical issues in *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980).

Recently, however, the Court has indicated a willingness to accept circumstances such as those present in *Mendenhall* and *Reid* as sufficient support for a reasonable suspicion of wrongdoing. We now know, for example, that behavior indicating a "typical attempt to smuggle drugs" does provide constitutionally adequate basis for detaining travelers and their luggage long enough for olfactory inspection by trained police dogs. *Sokolow*, 109 S.Ct. 1581, 1583. A "typical attempt," according to the Supreme Court, includes many of the same circumstances relied upon by police officers in the instant cause, including nervousness, cash purchase of tickets, and travel to cities, such as Miami, which are major sources of illegal drugs. Apparently, the Supreme Court is able to recognize a "typical attempt to smuggle drugs" from some "three separate days" of testimony at the trial court level in *Sokolow*, 109 S.Ct. at 1583 n. 1, and from "common-sense conclusions about human behavior[.]" 109 S.Ct. at 1585, quoting from *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695.

Nevertheless, the facts upon which Drug Enforcement agents relied in *Sokolow* seem to us considerably more suspicious than those articulated by Officers Rodriguez and Corley in the instant cause. For example, the suspect in that case traveled by plane under an alias from Honolulu to Miami for a stay of only 48 hours. Of greater significance, however, is the empirical support evidently provided by Drug Enforcement agents for their belief that Sokolow's behavior was typical of drug couriers. The present record contains no

---

**10.** *Cortez* provides an especially clear illustration of rational deductions by Border Patrol agents, based on careful circumstantial investigation and past personal experience, leading to a well-founded suspicion, supported by a lower level of confidence than probable cause, that the suspects in that case were actually transporting illegal aliens at the time they were briefly detained for questioning.

**11.** We are reluctant to hold as a matter of law that behavior of appellant and his companions, as described by the officers in their testimony, was altogether irrelevant upon the question of drug transportation. Therefore, although its relevance is far from clear to us, we hold merely that its probative force, if any, was insufficient to authorize a reasonable suspicion of wrongdoing in the instant cause.

such evidence, and the matter does not yet seem to us one of common knowledge.

The behavior upon which the investigating officers here relied may have seemed odd to them. But that is not the issue. Appellant's demeanor must have been indicative of drug trafficking in particular, not merely of eccentricity. It must have been of such character as to justify an involuntary investigative detention of all persons exhibiting it. Without some evidence tending specifically to show a significantly higher incidence of such behavior among drug traffickers than in the general population, a well-founded, reasonable suspicion of criminal wrongdoing simply was not objectively justified in this case.

The judgments of the Court of Appeals and the trial court are reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

MALONEY, J., not participating.