James Roy WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–91–00516–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 31, 1992.

Henry K. Oncken, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

Appellant, James Roy White, plead guilty to the offense of possession of a controlled substance after his motion to suppress was denied. On appeal, he challenges the trial court's ruling on the motion to suppress, asserting that the motion should have been granted because the evidence obtained against him was the product of an illegal arrest contrary to the Fourth amendment of the United States Constitution, article I section 9 of the Texas Constitution, and chapters 14 and 18 of the Texas Code of Criminal Procedure. We overrule appellant's single point of error and affirm the ruling of the trial court.

On March 1, 1991, Houston police officer W.J. Thrailkill and two other police officers were on patrol in known narcotics locations attempting to investigate drug transactions. Officer Thrailkill and the other officers went to the Live Oak Apartments in Houston, a known narcotics trafficking station. As the policemen pulled into the parking lot of the apartment complex, Officer Thrailkill observed the appellant walking toward them and noted that when appellant saw the officer he got a real panicked look on his face. Appellant then turned sideways to the officers and placed the contents of his right palm in his mouth.

Officer Thrailkill approached the appellant and identified himself as a police officer. He asked appellant his name and if the appellant lived at the apartment complex. When appellant tried to respond, the officer saw a white substance in his mouth that was visible as he talked. The officer believed it to be crack cocaine and had appellant walk over to the police car and told him to spit out the contents of his mouth. Appellant attempted to spit while at the same time tried to keep the white substance in his mouth. He was unsuccessful and eventually, a white, rock-like substance did escape from appellant's mouth onto the hood of the officer's car. A field test of the substance confirmed Officer Thrailkill's belief. It was crack cocaine. Appellant was then formally placed under arrest.

Prior to trial, appellant filed a motion to suppress the cocaine evidence on the ground that the evidence was obtained as the result of an illegal arrest. The trial court denied the motion, and sentenced appellant to ten years in the penitentiary pursuant to appellant's guilty plea.

Appellant argues that he was illegally detained because Officer Thrailkill did not have a reasonable suspicion to detain and question him as required by both the United States and the Texas Constitutions. In essence, appellant claims he was illegally detained, or seized, when Officer Thrailkill asked him who he was and if he lived in the apartment complex. Appellant reasons that because the officer did not have a reasonable suspicion based on articulable facts that appellant was engaging or about to engage in criminal activity, he was not constitutionally permitted to question appellant. Therefore any evidence obtained after that questioning began is constitutionally prohibited and should have been suppressed by the trial court. For the reasons hereinafter articulated, we disagree.

■ The real question raised by appellant is not whether he was detained or seized. Clearly he was ultimately detained and arrested. The relevant question is *when* was he detained, and was the detention constitutionally permissible? When do police encounters, such as occurred here, become actual detentions or seizures implicating constitutional interests? The answer is seldom clear cut. However, several federal and state cases have laid down some guidelines to assist us. Obviously, not every encounter between a citizen and a police officer amounts to a seizure requiring constitutional justification. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Police stops can be constitutionally challenged only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). An investigative stop, or seizure, requiring articulable suspicion occurs only when a police officer accosts an individual and restrains his freedom to walk away. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Appellant asserts that when Officer Thrailkill approached him, told him he was a police officer and asked him his name and where he lived, appellant was, in effect, constitutionally "seized" because a reasonable person would have believed that he was not free to leave. *Mendenhall, supra.* To support his conclusion, appellant points to Officer Thrailkill's response during cross-examination that if appellant had tried to leave during the encounter, he would have detained him. The relevant portion of the cross-examination occurred as follows:

DEFENSE COUNSEL: At the time you approached the defendant, James Roy White, was he free—could he have turned around and walked off?

THRAILKILL: He could have. I stopped to walk up to ask his name. He should have not tried talking.

DEFENSE COUNSEL: You would have let him go if he'd turned around?

THRAILKILL: No. I probably—he was not detained, he wasn't under arrest or anything. I just detained him to investigate if he lived there. I didn't know if he lived there.

DEFENSE COUNSEL: But in any event he was not free to go, you would have detained him had he turned around to walk off?

THRAILKILL: Yes, sir, I would have.

DEFENSE COUNSEL: Your purpose at that point was you went up there to ask him to spit the substance out of his mouth and ascertain whether or not it was, in fact, cocaine?

THRAILKILL: No. The first thing I was asking was what was his name, if he lived there, that information.

 The officer's response is not as clear cut as appellant suggests. It could certainly be interpreted as internally ambiguous because the officer stated that appellant could have turned around and walked off, and that he thought appellant should not have tried talking. He also makes it clear that he was seeking information. It is clear that the observation of the white substance in appellant's mouth was the triggering factor that then turned the encounter into a detention. The initial questions were not overly intrusive, and standing alone did not turn the encounter into a detention raising constitutional interests. Police officers are allowed just as much freedom as anyone to ask questions of fellow citizens. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.1986); *State v. Grant*, 832 S.W.2d 624 (Tex.App.— Houston [14th Dist.] 1992, no pet.). Under the circumstances and in view of the appellant's somewhat strange behavior, the officer had the right to ask appellant the initial questions concerning his identity and residence. Appellant, likewise, had the right to decline to answer them or to walk away. He chose to attempt to answer them and by the contents of his mouth, provided the articulable suspicion to warrant the officer's detention of him for further investigation. If he had elected not to answer or to leave and the officer detained him further, the officer would have then had to show articulable suspicion for detaining him that would pass constitutional muster. But the limited questions asked here amount to a consensual encounter and do not implicate any Fourth Amendment concerns.

 In any event, the standard for determining whether a stop constitutes a seizure is not determined solely by what the officer might have hypothetically done if the appellant had tried to leave, but whether in view of all the circumstances, a reasonable person would have believed that he was not free to leave. *Mendenhall, supra*. And we as an appellate court are not at liberty to disturb any finding made by the trial court which is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App.1980). The trial judge at the hearing to suppress was the sole judge of the credibility of the witnesses. He could have chosen to believe or disbelieve any or all of the witnesses' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex. Crim.App.1980). We find there was support in the evidence for his ruling here. We further find, based on the reasons we have articulated, that the application of constitutional standards of the Fourth Amendment in this case was not violated by the trial judge in his denial of the motion to suppress.

 As regards appellant's claim that his rights were violated under article I, section 9 of the Texas Constitution, we find that he did not separate this contention into a separate ground for relief. Presumably, he makes no distinction between the United States and the Texas Constitutions in this regard. In any event, he has by failing to separate the federal and state constitutional issues and by failing to provide substantive analysis of argument on the latter issue, failed to properly preserve error in that regard. *Heitman v. State*, 815 S.W.2d 681, 690–91, n. 23 (Tex.Crim.App. 1991) *citing McCambridge v. State*, 712 S.W.2d 499, 501–502, n. 9 (Tex.Crim.App. 1986).

Nonetheless, our review of recent cases by the Court of Criminal Appeals supports our view that the initial police encounter in this case is not violative of either the federal or our state constitutional provisions concerning search and seizure. *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991); *Holladay v. State*, 805 S.W.2d 464 (Tex. Crim.App.1991). We have previously re-

viewed our interpretation of these cases in connection with constitutional search and seizure issues. *See State v. Grant,* 832 S.W.2d 624 (Tex.App.—Houston [14th Dist.] 1992, writ ref'd). We found in *Grant* that such initial questioning of individuals concerning ownership of luggage in a bus station was not, standing alone, a seizure implicating federal or state constitutional issues.

In *Holladay,* an officer asked a suspect if he could talk to him after observing the suspect's nervous behavior in deplaning a flight from Miami. The suspect agreed and the officer displayed his police identification card. The officer then asked the suspect if he had just arrived in Houston and requested the individual to produce his plane ticket. The officer also asked about whether the suspect knew or had traveled with another known suspect. He then asked the suspect for some identification. The court of criminal appeals held that these questions did not convert the initial encounter into a seizure violative of the Fourth Amendment.

In *State v. Grant* we followed the *Holladay* line of reasoning. In *Grant,* a State's appeal, an officer observed the appellees, during the early morning hours, exit a private car in front of the downtown Houston bus station. The appellees paid the driver of the private car in cash and proceeded to carry five suitcases into the ' terminal, where they stopped briefly at a snack bar, then took the bags to the far end of the bus station near a deserted gate. The appellees then separated themselves from the luggage by walking away and positioning themselves at a nearby wall about five to ten feet away. The officer and his partner approached them and asked one of the suspects if he could talk with him and identified himself as a police officer. The appellee, Grant, consented, and informed the officer that he was enroute to San Antonio. The officer then asked Grant if the nearby luggage which he had carried across the terminal belonged to him. Grant answered that it did not and denied any knowledge as to who the owner might be. A similar encounter occurred between the other officer and the other appellee, Kelly. After

both appellees denied any ownership or knowledge of the suitcases, a dog-sniff was conducted on the luggage, revealing a quantity of marihuana. The appellees were arrested. Subsequently, the trial court granted appellee's motions to suppress the marihuana evidence because they had been illegally detained in violation of their rights. We reversed, holding that the police questioning of the defendants was not unreasonable, and measurably furthered public interests in enforcing our drug laws.

Likewise, in the present case, no reasonable suspicion was necessary merely for Officer Thrailkill to approach appellant and ask his identity and address. However, articulable facts were required for the subsequent request that appellant spit the contents of his mouth onto the hood of the police car. Review of the record reveals that Officer Thrailkill did have reason to suspect criminal activity at that point because he observed the white substance in appellant's mouth. This fact, along with others, such as being in a known narcotics trafficking location, and appellant's actions of attempting to hide the substance in his mouth, constituted sufficient basis for detaining appellant for further investigation into possible criminal activity.

■ Appellant refers us to the case of *Johnson v. State,* 658 S.W.2d 623 (Tex. Crim.App.1983). In *Johnson,* the court of criminal appeals stated that actions which are as consistent with innocent activity as with criminal activity cannot form the basis of a reasonable suspicion justifying detention. Primarily, appellant argues that his action of placing the contents of his right hand into his mouth is as indicative of innocent behavior as it is of illegal activity. He points to testimony by Officer Thrailkill where the officer admits that appellant could have been placing gum, or some other substance into his mouth. We agree. Simply placing something in one's mouth is not enough to warrant an investigatory stop by police, even if the action takes place in a questionable part of town, and even if the action seems odd to police officers. Eccentric or strange behavior must

rise to the level of indicating criminal activity to justify detention. However, it was not this action that led the policemen to detain appellant. The officers initially approached appellant merely to ask his name and address, which we have already illustrated does not implicate constitutional concerns. It was the observation of the white substance in appellant's mouth, along with the surrounding circumstances, that formed the basis of Officer Thrailkill's suspicion to detain appellant by requiring him to reveal the contents of his mouth. Therefore, the cocaine evidence obtained was not the product of an illegal arrest, and appellant's motion to suppress this evidence was properly denied.

In *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991), the Court of Criminal Appeals held that narcotics officers did not have reasonable suspicion of criminal activity sufficient to justify detention of the defendant based upon the defendant's behavior in a train station. The appellant in *Crockett*, accompanied by a woman, purchased two train tickets with a large amount of cash, and subsequently lied to narcotics officers upon being questioned about his destination. In addition, officers reported that the appellant looked nervous prior to and during his encounter with the police. The court held that this activity was as consistent with innocent behavior as with criminal activity, and therefore the detention in that case was unreasonable.

The present case can be distinguished from *Crockett*. In *Crockett*, after asking the initial questions pertaining to identity and destination, the police officers asked to search the appellant's luggage for narcotics. At that point, the court found there was no real basis for suspecting drug trafficking based upon the appellant's name and falsification of his travel plans. In the present case, however, it was what occurred during the appellant's response to the permitted questions about his identity and address that led to his detention. Had Officer Thrailkill simply observed appellant putting something into his mouth and then approached him and ordered him to remove the contents, the detention would have clearly been constitutionally suspect.

In sum, Officer Thrailkill observed appellant reacting somewhat strangely in a known narcotics area and approached him to ask questions about whether he lived there. When appellant attempted to answer, the officer observed the white substance and asked him to spit out the substance. Only at this point did the detention occur, and the officer, based on his observation and the other circumstances, was justified in detaining and arresting appellant.

Accordingly, we overrule appellant's sole point of error, and affirm in denying the motion to suppress.