IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-511-CR





MANUEL RODRIGUEZ PEREZ, a/k/a CHOMPY PEREZ,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. CR92-0349-B-1, HONORABLE DICK ALCALA, JUDGE PRESIDING



 




 After the jury found appellant guilty of attempted capital murder, Tex. Penal Code
Ann. §§ 15.01 (West Supp. 1993) and 19.03 (West 1989 & Supp. 1993) and aggravated assault,
Tex. Penal Code Ann. § 22.02 (West Supp. 1993), the court assessed punishment, enhanced by
prior felony convictions, at confinement for fifty-five years. Appellant asserts three points of
error, contending that the trial court erred by: (1) overruling appellant's motion to suppress
evidence; (2) overruling appellant's objection to the inclusion of the definition of voluntary
intoxication in the jury charge; and (3) denying appellant's requested jury charge under Tex. Code
Crim. Proc. Ann. art. 38.23 (West Supp. 1993). We overrule appellant's points of error and
affirm the judgment of the trial court.

 In his first point of error, appellant contends that the trial court erred in overruling
his motion to suppress evidence that was obtained as the result of an unlawful investigative stop. 
Appellant urges that the stop and subsequent detention were the result of observations by an
officer that were just as consistent with innocent activity as with criminal behavior.

 About midnight on January 27, 1992, San Angelo Police Officer Steve Quade was
on patrol in an area where a number of bars were located. Quade testified that shortly after
midnight he observed a pickup truck leaving Becky's Bar that he identified as having a connection
with an arrest on the previous night. Quade related that, the prior evening, he and a fellow officer
had arrested a man for intoxication who was about to enter this vehicle outside a nearby bar. A
check of outstanding warrants revealed that this person's driver's license had been suspended.

 Quade testified that on the night in question he observed the pickup after it left the
bar "swerving approximately two feet from side to side in the outside lane, driving extremely
slow, also pumping the brakes constantly." Quade stated that the vehicle's swerve or drift was
not normal for a vehicle traveling at an "extremely slow speed." Quade related that he had
learned from experience that people who leave bars around the midnight closing hour tend to have
had more to drink than those who leave earlier.

 After stopping the pickup, appellant told Quade that he did not have a driver's
license and "then he ran." Quade chased appellant until he was able to tackle him. A fight ensued
in which appellant was able to get on top of Quade with his knees positioned above Quade's waist. 
Quade stated that after appellant struck him in the groin two times, he was able to reach his
portable radio and call for help. Appellant grabbed the radio and used it to strike Quade on the
top of the head and on back of the head. Quade and appellant fought for Quade's gun until
appellant was able to gain control of it. Quade testified that appellant told him that he was going
to kill him.

 San Angelo Police Officer Rick Keeling responded to Quade's call for assistance. 
Keeling testified that when he arrived at the scene he observed an officer "laying face down . . .
the defendant [appellant] was standing at the top of the officer's head and crouched down over the
officer." As Keeling approached the parties, appellant "stood in an upright position and raised
the firearm and pointed it in my direction at me." Keeling stated that he was in fear of his life
and fired three shots at appellant. Appellant dropped the gun and started walking slowly away
before he responded to a demand that he turn around where his hands could be observed.

 Appellant contends that all evidence regarding facts that occurred after the initial
stop should have been suppressed since the officer did not have specific articulable facts which,
in light of the officer's experience and personal knowledge, together with other inferences from
these facts, would warrant an intrusion of a citizen's freedom. Appellant directs our attention to
Quade's testimony that he had not seen appellant committing any traffic violations.

 In determining whether a temporary detention is justified, the pivotal issue is not
whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to
particular types of noncriminal acts. Holladay v. State, 805 S.W.2d 464, 469 (Tex. Crim. App.
1991). We find the following analysis in Crockett v. State, 803 S.W.2d 308 (Tex. Crim. App.
1991), to be helpful:



Appellant contends in effect that his behavior could not have been suspicious
because it was perfectly lawful. But such circumstances as will raise suspicion that
illegal conduct is taking place need not be criminal in themselves. Rather, they
may include any facts which in some measure render the likelihood of criminal
conduct greater than it would otherwise be.


. . . .


Minor intrusions which measurably further imperative public interests in law
enforcement require relatively less confidence of wrongdoing than do more
extensive intrusions which advance law enforcement interests but little. At a
minimum, however, the suspicious conduct relied upon by law enforcement
officers must be sufficiently distinguishable from that of innocent people under the
same circumstances as to clearly, if not conclusively, set the suspect apart from
them.



Id. at 311 (citations omitted).

 In the instant cause, appellant was driving a vehicle that was associated with an
arrest for intoxication the previous evening. The pickup was leaving a bar at a time when those
departing are likely to have consumed a larger amount of intoxicating beverages than those who
leave at earlier hours. Officer Quade observed the vehicle moving at an "extremely slow rate of
speed" and swerving within the lane. Also, the driver was "pumping the brakes constantly." We
hold that the officer was justified in making an investigatory stop. The evidence concerning
appellant's flight and his threats to Officers Quade and Keeling was clearly admissible. 
Appellant's first point of error is overruled.

 In his second point of error, appellant complains of the court's action in overruling
his objection to the inclusion of the definition of voluntary intoxication in its charge. Appellant
urges that intoxication was not an issue in the trial and points to the fact that neither appellant nor
the State requested the instruction. Appellant reasons that the charge which provided in part that
voluntary intoxication does not constitute a defense to the commission of a crime constituted a
comment on the weight of the evidence.

 It is undisputed that appellant was intoxicated on the occasion in question. Dr.
Charles Benham, the emergency room physician who treated appellant following the events in
question, testified that appellant's blood alcohol level was almost twice that considered to
constitute intoxication in Texas. Dr. Benham stated that, in his opinion, appellant's alcohol level
was high enough to impair his judgment.

 Evidence of temporary insanity caused by intoxication may be introduced for the
purpose of mitigation of penalty. Tex. Penal Code Ann. § 8.04(b) (West 1974). Under section
8.04(d), intoxication is defined as the "disturbance of mental or physical capacity resulting from
introduction of any substance into the body." In Williams v. State, 567 S.W.2d 507, 510 (Tex.
Crim. App. 1978), the court held that no error was shown under Penal Code section 8.04 by
virtue of the trial court charging the jury on intoxication at the guilt-innocence stage of the trial. 
We perceive no error in the trial court's action in charging on intoxication in the instant cause. 
Appellant's second point of error is overruled.

 In his third point of error, appellant asserts that the trial court erred in denying his
requested jury instruction as to when an investigative detention is lawful. Appellant urges that
the trial court was mandated by Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 1993), to
instruct the jury to decide whether the evidence was unlawfully obtained, and if so, to disregard
the evidence.

 A trial court is required to include a properly worded article 38.23 instruction in
the jury charge only if there is a factual dispute as to how the evidence was obtained. Thomas v.
State, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986); Murphy v. State, 640 S.W.2d 297, 299
(Tex. Crim. App. 1982). In the instant cause, there was no dispute as to the facts surrounding
the investigative stop and detention of appellant. Since the facts were not controverted, no
instruction was required. Appellant's third point of error is overruled.

 The judgment of conviction is affirmed.



 

 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices Aboussie and Davis*

Affirmed

Filed: October 6, 1993

Do Not Publish















* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).