shamsie 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00752-CR







State of Texas, Appellant



v.



Humayen Shamsie, Appellee







FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 440-541, HONORABLE WILFRED AGUILAR, JUDGE PRESIDING







 The State of Texas appeals from the trial court's order suppressing evidence seized from
appellee, Humayen Shamsie. See Tex. Code Crim. Proc. § 44.01(a)(5) (West Supp. 1997). The trial
court granted Shamsie's motion to suppress the evidence on the ground that it was obtained when officers
detained Shamsie without reasonable suspicion, in violation of the federal and state constitutions and the
Texas Code of Criminal Procedure. We will affirm the order.



BACKGROUND


 One early morning in July 1995, Shamsie was at a dance club, Eden 2000. Several officers
of the Austin Police Department were on uniformed patrol of the club following undercover purchases of
narcotics there the previous two evenings. As Officer Suarez walked down some stairs inside the club, he
observed Shamsie remove a tissue from his left pocket, unfold it and place it back in his pocket. From his
view the officer could see that the tissue contained a tablet but could not tell what color or kind. When
Shamsie left the club, Officer Suarez, accompanied by Officer Miller, followed him outside. As Shamsie
stood on the sidewalk, Officer Suarez tapped Shamsie on the shoulder; as Shamsie turned to face him, the
officer asked to see his identification. Shamsie, appearing surprised, reached into his pocket. Suarez
testified that Shamsie pulled out the tissue and threw it on the ground. When a third patrolman, Officer
Perez, reached for the tissue, Shamsie pulled away. After a brief struggle, the officers arrested Shamsie. 
Tests revealed the tablet to be Diazepam, a prescription drug also known as Valium. Shamsie was
subsequently charged with misdemeanor possession of a controlled substance. See Tex. Health & Safety
Code Ann. §§ 481.035, .104, .117 (West Supp. 1997).

 Shamsie filed a motion to suppress the evidence on the ground that it was seized in violation
of his rights under the Fourth Amendment to the United States Constitution, Article I, Section 9 of the
Texas Constitution, and Chapter 14 and Article 38.22 of the Code of Criminal Procedure. See U.S.
Const. amend. IV, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. ch. 14 (West 1977 & Supp.
1997) & art. 38.22 (West 1979 & Supp. 1997). After a pretrial hearing the trial court granted the motion,
from which the State appeals.



DISCUSSION


 By two points of error, the State contends the trial court abused its discretion by applying
the wrong legal standards in determining 1) when Shamsie was seized for constitutional purposes and 2)
whether police had a constitutionally adequate basis for such seizure. Our review of a trial court's rulings
at a suppression hearing is limited to determining whether the trial court abused its discretion. DuBose v.
State, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996). As long as the trial court applies the appropriate
legal standard, its findings of historical fact and application of the law to those facts are entitled to great
deference on appeal. State v. Carter, 915 S.W.2d 501, 504 (Tex. Crim. App. 1996). Even if this Court
would have reached a different result, as long as the trial court's rulings are within the "zone of reasonable
disagreement," we should not intercede. Dubose, 915 S.W.2d at 496. 



1. Seizure

 Both investigative detentions and arrests are seizures for purposes of constitutional analysis. 
Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Under both the federal and state
constitutions, a seizure has occurred when a reasonable person would believe he or she was not free to
leave and has actually yielded to a show of authority or has been physically forced to yield. (1) Johnson, 912
S.W.2d at 236. Law enforcement officers are permitted to approach citizens without constitutional
justification in order to ask questions and even to request a consent to search. Id. at 235; Holladay v.
State, 805 S.W.2d 464, 471 (Tex. Crim. App. 1991). If a reasonable person would feel free "to
disregard the police and go about his business," the encounter is consensual and merits no further analysis. 
Johnson, 912 S.W.2d at 235 (citing Hodari, D., 499 U.S. at 628). On the other hand, as soon as a show
of authority would cause one to feel restrained, the encounter is nonconsensual and whether a seizure has
occurred depends on whether the person flees or submits. (2) Id.

 The State contends that, in confronting Shamsie, the officers did not show sufficient
authority to create a reasonable belief in Shamsie that he was not free to leave. While we recognize
situations exist in which a police officer's request for identification amounts to a consensual encounter, e.g.,
Holladay, 805 S.W.2d at 471; White v. State, 846 S.W.2d 427, 430-31 (Tex. App.--Houston [14th
Dist.] 1992, no pet.), we think the trial court could rationally conclude that the police encounter with
Shamsie constituted a nonconsensual encounter. There were at least four officers around Shamsie when
Officer Suarez touched him on the shoulder and requested his identification. Shamsie was between the
club's entrance and the curb of the street where cars were parked when the officers approached. When
asked whether Shamsie would have been able to leave, Officer Suarez responded that "it depends how
hard he wanted to try," and that the officers would not have permitted it. Although an officer's intent to
detain the suspect does not, alone, justify the suspect's belief that he is not free to leave, the totality of these
circumstances created an atmosphere in which a reasonable person would not have felt free to leave. 

 Evidence obtained as the fruit of an unconstitutional seizure is inadmissible. Johnson v.
State, 658 S.W.2d 623, 627 (Tex. Crim. App. 1978); Giossi v. State, 831 S.W.2d 887, 889 (Tex.
App.--Austin 1992, pet. ref'd). Although protection from unreasonable searches and seizures does not
extend to property that is abandoned before a seizure occurs, property abandoned in response to unlawful
police conduct is subject to constitutional protection. California v. Hodari, D., 499 U.S. 621, 629
(1991): Hawkins v. State, 758 S.W.2d 255, 257 (Tex. Crim. App. 1988).

 The State contends that Shamsie did not actually yield to the officers until they arrested
him. (3) See Johnson, 912 S.W.2d at 236. The State concludes that, because the trial court could not have
found Shamsie yielded under these facts, it did not apply the law as set forth in Johnson. See id. 
Therefore, the State contends, Shamsie voluntarily abandoned the tissue and its contents before he was
seized and cannot claim constitutional protection from their seizure. See Hawkins, 758 S.W.2d at 257. 
We reject the State's argument. 

 The record does not reveal the trial court's reasoning; we must, therefore, defer if any
rational basis supports the trial court's conclusions in granting the motion to suppress. See Carter, 915
S.W.2d at 504-05; Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). One reasonable
construction of these facts is that Shamsie reached into his pocket to retrieve his identification but pulled
out the tissue by mistake. The judge thus could have concluded that Shamsie had submitted to the show
of authority when he reached into his pocket in response to the officer's request. By contrast, the court in
Johnson held when a suspect confronted in a breezeway bolted and ran away as soon as he saw the
police, a seizure had not occurred. 912 S.W.2d at 234. The record here contains no evidence that
Shamsie attempted to flee, but merely states that he "pulled away" when Officer Perez rushed for the tissue
at his feet, an understandable reaction. That a brief struggle ensued is not indicative of flight; the officers
had not told Shamsie he was under arrest. We find the determination that Shamsie submitted to the show
of authority reasonable under these facts; consequently, we must defer to the trial judge's ruling. We find
no abuse of discretion. 

 Furthermore, we reject the State's reliance on State v. Rose for the proposition that
Shamsie abandoned the tissue before any seizure occurred. See 844 S.W.2d 911, 912 (Tex. App.--Tyler
1992, no writ). In Rose, the court of appeals found that the trial court did not apply the standard for seizure
under Hodari, D., as it did not have the benefit of Johnson before it. Id. at 913. The court of appeals
stated:



Rose threw down the cocaine while still retreating from the officers, before submission to
the officer's "show of authority," and before the application of any physical force to effect
the stop.



Id. at 912. We have concluded that a rational construction of the facts before us is that Shamsie was
submitting to the request for identification when he reached into his pocket. (4) Therefore, the detention and
Shamsie's reaching into his pocket occurred simultaneously. Because we will uphold the trial court's finding
that the officers lacked reasonable suspicion, Shamsie dropped the tissue in response to unlawful police
conduct. See Hawkins, 758 S.W.2d at 259. Consequently, the evidence was properly suppressed. We
overrule the State's first point of error.



2. Reasonable suspicion

 By its second point of error, the State argues that any seizure was a constitutionally justified
investigative detention. A police officer must have a reasonable and articulable basis for suspecting criminal
activity to justify an investigatory detention. Johnson, 912 S.W.2d at 235; Crockett v. State, 803
S.W.2d 308, 311 (Tex. Crim. App. 1991); Giossi, 831 S.W.2d at 889. The reasonable suspicion
determination is based on the totality of the circumstances. U.S. v. Sokolow, 490 U.S. 1, 9 (1989);
Holladay, 805 S.W.2d at 473. "Reasonable suspicion" is "something more than an inchoate and
unparticularized suspicion or hunch," Holladay, 805 S.W.2d at 469 (quoting Sokolow, 490 U.S. at 7),
but it requires less information than is constitutionally required for probable cause to arrest. Johnson, 912
S.W.2d at 235. The relevant inquiry is not whether particular conduct is innocent or guilty, but the degree
of suspicion that attaches to particular types of noncriminal acts. Holladay, 805 S.W.2d at 469; see also
Angulo v. State, 727 S.W.2d 276, 279 (Tex. Crim. App. 1987). 

 The State again contends that the trial court applied the wrong legal standard. At the
suppression hearing, defense counsel pointed to several types of nonprescription drugs that look like
Diazepam. (5) Defense counsel then argued that "if an activity is as consistent with innocent activity as it is
with criminal activity, that does not meet the standard of reasonable suspicion." The State urges that the
trial judge's express comment that Shamsie's conduct was as consistent with innocent as with criminal
activity is cause for reversal of the order. We disagree.

 Considering the testimony at the suppression hearing, a rational trial court could conclude
that the police lacked reasonable suspicion to detain. See Carter, 915 S.W.2d at 504-05. Officer Suarez
testified that the fact that the pill was in a tissue and Shamsie carefully put it back in his pocket raised his
suspicions. It was Suarez's opinion that it is "not usual" for people to carry prescription drugs in a tissue. 
The prosecution argued that the location, a club where previous narcotics arrests had been made, should
raise the degree of suspicion. We agree that unusual activity in a place known for criminal acts may, under
some circumstances, give rise to reasonable suspicion to detain a person. However, Officer Suarez testified
that the pill could have been an over-the-counter product, such as allergy medication or pain reliever. The
officer did not see Shamsie give the pill to or receive the pill from anyone, nor did he have any opinion on
whether Shamsie was intoxicated. The sum of Suarez's testimony was that Shamsie had a pill in a tissue
inside a club where arrests had been made. We find this an insufficient basis for reasonable suspicion that
Shamsie had committed, or was about to commit, a crime. See Reid v. Georgia, 448 U.S. 438 (1980)
(circumstances described "very large category of presumably innocent" persons); Holladay, 805 S.W.2d
at 473; Crockett, 803 S.W.2d at 311. There was nothing to set Shamsie's conduct apart from otherwise
innocent conduct. See Crockett, 803 S.W.2d at 311. 

 The trial court may consider whether Shamsie's conduct was "as consistent with innocent
activity as with criminal activity" as a factor in determining the degree of suspicion attaching to the conduct. 
See Woods v. State, 933 S.W.2d 719, 726 (Tex. App.--Austin 1996, pet. filed). In Crockett, the
appellant contended that his behavior could not have been suspicious because it was "perfectly lawful." 
The court of criminal appeals elaborated on the reasonable suspicion standard in the investigative detention
context: 



[S]uch circumstances as will raise suspicion that illegal conduct is taking place need not be
criminal in themselves. Rather, they may include any facts which in some measure render
the likelihood of criminal conduct greater than it would otherwise be.


. . .


At a minimum, however, the suspicious conduct relied upon by law enforcement officers
must be sufficiently distinguishable from that of innocent people under the same
circumstances as to clearly, if not conclusively, set the suspect apart from them.



Crockett, 803 S.W.2d at 311 (citing Brown v. Texas, 443 U.S. 47, 52 (1979)). Therefore, observed
conduct that does not sufficiently set a person apart from innocent persons under the same circumstances
does not, alone, create reasonable suspicion; an officer must have facts increasing the likelihood of criminal
conduct. 

 At the hearing below, the judge stated



I just don't think there's enough. If this were to happen on a street corner where drugs
were supposedly sold and a person by himself reaches in his pocket and pulls out a tissue
and there's a little pill in there, that's not enough to stop that person. You have to have
something more than that. 


. . . 


Merely because they are in a club where drugs happen to be sold doesn't warrant that kind
of intrusion . . . .



These comments demonstrate the trial court considered whether the circumstances gave rise to a degree
of suspicion constitutionally justifying a detention. See Sokolow, 490 U.S. at 9; Holladay, 805 S.W.2d
at 473. The record contains nothing that set Shamsie apart from an innocent person. The trial court's
conclusion that the officers lacked constitutionally adequate suspicion was rational. Accordingly, the trial
court did not abuse its discretion. We overrule the State's second point of error.



CONCLUSION


 Having overruled both of the State's points of error, we affirm the order of the trial court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: January 9, 1997

Publish
1.   Until recently, a seizure had taken place when a reasonable person facing a show of
authority would not feel free to leave. Johnson, 912 S.W.2d at 232. In Johnson, however, the
court of criminal appeals adopted the definition of seizure applied under the Fourth Amendment by the
United States Supreme Court in Hodari, D., adding the requirement that the citizen actually yield to the
officers' show of authority. Id. at 236.
2.   Under the pre-Hodari, D. standard, one's constitutional rights were implicated as soon as one
would feel unfree to leave. See Holladay, 805 S.W.2d at 472 (consensual encounter not a detention);
Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983) (nonconsensual encounter a
detention).
3.   The State further contends Shamsie did not establish a reasonable expectation of privacy
in the tissue or its contents and he had no standing to complain of its seizure. Because the
tissue was on Shamsie's person at the time the detention occurred, we reject this argument. 
4.   We also note that the physical touching of Shamsie may, in itself, have resulted in a
detention. See Hodari, D., 499 U.S. at 626 ("An arrest requires either physical force . . . or, where
that is absent, submission to the assertion of authority.").
5.   Specifically, defense counsel argued that Actifed Sinus, Sudafed, Tylenol P.M., and
Dimetapp are similar in appearance to Diazepam.



. . .


At a minimum, however, the suspicious conduct relied upon by law enforcement officers
must be sufficiently distinguishable from that of innocent people under the same
circumstances as to clearly, if not conclusively, set the suspect apart from them.



Crockett, 803 S.W.2d at 311 (citing Brown v. Texas, 443 U.S. 47, 52 (1979)). Therefore, observed
conduct that does not sufficiently set a person apart from innocent persons under the same circumstances
does not, alone, create reasonable suspicion; an officer must have facts increasing the likelihood of criminal
conduct. 

 At the hearing below, the judge stated



I just don't think there's enough. If this were to happen on a street corner where drugs
were supposedly sold and a person by himself reaches in his pocket and pulls out a tissue
and there's a little pill in there, that's not enough to stop that person. You have to have
something more than that. 


. . . 


Merely because they are in a club where drugs happen to be sold doesn't warrant that kind
of intrusion . . . .



These comments demonstrate the trial court considered whether the circumstances gave rise to a degree
of suspicion constitutionally justifying a detention. See Sokolow, 490 U.S. at 9; Holladay, 805 S.W.2d
at 473. The record contains nothing that set Shamsie apart from an innocent person. The trial court's
conclusion that the officers lacked constitutionally adequate suspicion was rational. Accordingly, the trial
court did not abuse its discretion. We overrule the State's second point of error.



CONCLUSION


 Having overruled both of the State's points of error, we affirm the order of the trial court.