

# NUMBER 13-13-00185-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                                **Appellant,**

**v.**

**MARK EMEDE GARCIA,**                                             **Appellee.**

### On appeal from the 377th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant the State of Texas challenges the trial court's granting of appellee Mark Emede Garcia's motion to suppress. By seven issues, which we consolidate as one, the State argues that the trial court erred in determining that the arresting officer's seizure of several weapons, drugs, and drug paraphernalia from Garcia's vehicle violated Garcia's constitutional and statutory rights. We affirm.

## I. Background

On February 6, 2012, Garcia was arrested after Victoria Sheriff's Deputy Jason Boyd discovered what he believed to be stolen guns in the vehicle Garcia was driving. In his search of Garcia and the vehicle after the arrest, Deputy Boyd discovered a small amount of methamphetamines and drug paraphernalia connected with the use of methamphetamines. Garcia was indicted for state jail felony possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). Garcia filed a motion to suppress, arguing that Deputy Boyd's search of his person and vehicle and subsequent seizure of evidence violated Garcia's rights under the United States and Texas Constitutions and the Texas Code of Criminal Procedure.

At the hearing on Garcia's motion to suppress, Deputy Boyd testified that he stopped Garcia around 5:00 p.m. for driving eighty-one miles per hour in a seventy mile-per-hour zone. Deputy Boyd approached the vehicle and asked for Garcia's driver's license and insurance. Deputy Boyd testified that Garcia handed him his license but was looking around the vehicle for the insurance information. Deputy Boyd asked Garcia if he wanted to look in the glove compartment. Garcia then opened the glove compartment partially and quickly closed it, telling Deputy Boyd that he did not have the insurance information. Deputy Boyd testified that Garcia seemed nervous and that Garcia's demeanor made Deputy Boyd suspicious that Garcia was concealing some sort of contraband in the vehicle.

Deputy Boyd asked Garcia to step out of the vehicle and then asked Garcia if he had any weapons. Garcia responded that he had just bought a pistol and pointed to a box on the floorboard of the vehicle. Garcia then told Deputy Boyd that there was

2

another gun in the backseat and two more in the center console. Deputy Boyd testified that he observed a bulge under Garcia's shirt. The bulge was a pistol in a holster, and Officer Boyd eventually determined that the gun in the holster was the one Garcia had just bought. Deputy Boyd testified that, for his safety, he secured that pistol from Garcia. The pistol was unloaded. Garcia then gave Deputy Boyd consent to retrieve the remaining guns from the vehicle. Another officer, Sergeant Mikulic of the Victoria Sheriff's Department, arrived on the scene around 5:30 p.m.

While Sergeant Mikulic stood with Garcia, Deputy Boyd took the guns to his patrol car and radioed dispatch to check the serial numbers of the guns to determine if they were stolen. Dispatch informed Deputy Boyd that two of the guns were stolen. At this point, Deputy Boyd placed Garcia under arrest for possession of the stolen guns. In a search of Garcia's person incident to arrest, Deputy Boyd retrieved a small plastic bag of methamphetamines from Garcia's pocket. In a further search of Garcia's vehicle, Deputy Boyd recovered drug paraphernalia associated with the use of methamphetamines. In his subsequent processing of the case, Deputy Boyd determined that dispatch had been mistaken about the two guns and that they were, in fact, not stolen.

After the close of evidence and argument by counsel, the trial court granted Garcia's motion to suppress. In its order granting the motion, the trial court made the following findings and conclusions:

> [T]he officer had reasonable suspicion to stop the vehicle defendant was driving for exceeding the speed limit;

> defendant consented for the officer to search the vehicle for guns; the officer called in to dispatch the make and model of the weapons with serial number to check if the weapons were stolen;

the officer did not have reasonable suspicion that the weapons were stolen when he called in the weapon information, and the reason for the stop (vehicle violation and proof of insurance issue) would have otherwise been concluded;

dispatch reported to the officer that 2 weapons were stolen based on the serial numbers, but did not relay the make and model even though that information was available at the time;

dispatch was wrong in advising that the weapons were stolen because the make and model on the information dispatch had were different than the make and model called in by the officer;

the defendant was then arrested based on dispatch's erroneous information that the weapons were stolen and the drugs were recovered in a search after the arrest.

The Court concludes that the defendant was illegally arrested and therefore the alleged drugs found after the arrest should be suppressed (assuming arguendo that the officer could detain a defendant [and] do a serial number check to see if weapons were stolen as part of the traffic stop without reasonable suspicion that weapons were stolen and when the stop would otherwise be concluded).

This appeal followed.[1]

## II. Standard of Review and Applicable Law

Whether the trial court properly ruled on a defendant's motion to suppress is reviewed under a bifurcated standard of review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but apply a de novo standard of review to pure questions of law

---

[1] Appellee has not filed a brief to assist us in our disposition of this appeal.

4

and mixed questions that do not depend on credibility. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011).

> In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings. The appellate court then reviews the trial court's legal ruling de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling.

*State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court does not enter findings of fact, we assume the court made implicit findings of fact supporting its ruling as long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In the end, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

"It has been an accepted part of state and federal jurisprudence for many years that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)) (other citations omitted). To justify an investigative detention, the officer must have a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011). A reasonable suspicion requires specific articulable facts based on the officer's experience and personal knowledge that, when coupled with the logical inferences from those facts, would warrant the intrusion on the detainee; "[t]hese facts must amount to more than a mere hunch or

suspicion." *Davis*, 947 S.W.2d at 244 (citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989)) (other citations omitted). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* (citing *Perez v. State*, 818 S.W.2d 512, 517 (Tex. App.—Houston [1st Dist.] 1991, no writ)) (other citations omitted). "This limitation means that once the reason for the stop has been satisfied, the stop may not be used as a 'fishing expedition for unrelated criminal activity.'" *Id.* at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsberg, J., concurring)). "[A] detention that is not temporary and reasonably related in scope to the circumstances which justified the interference, is unreasonable and, thus, violative of the Fourth Amendment." *Id.*

### III. Discussion

By one issue, the State argues that the trial court erred in granting Garcia's motion to suppress. Specifically, the State argues that: (1) Deputy Boyd had the legal authority to temporarily seize Garcia's weapons during the traffic stop; (2) Deputy Boyd had the legal authority to call in the seized weapon's identifiers to determine if they were stolen; (3) Deputy Boyd did not unduly prolong the traffic stop; (4) Deputy Boyd acted in objective good faith in relying on the dispatch's report that the weapons were stolen; and (5) as such, the evidence obtained was not excludable under the constitutions and statute as fruits of the poisonous tree.

To begin, we note that there is no dispute that Deputy Boyd was legally justified in initiating the traffic stop; Garcia's traffic violation provided the reasonable suspicion to

support the stop. The motion to suppress dealt with Deputy Boyd's actions following the initial stop and investigation into the traffic violation. The trial court concluded that Deputy Boyd did not have reasonable suspicion to believe the weapons in Garcia's vehicle were stolen, and his detention of Garcia beyond concluding the traffic violation was therefore unjustified. The trial court made no specific fact findings supporting this conclusion. At the suppression hearing, Officer Boyd testified that based on Garcia's nervous demeanor, he suspected that Garcia was concealing some sort of contraband in the vehicle. He then held Garcia for over thirty minutes to run checks on the weapons he retrieved from Garcia's person and vehicle that Garcia voluntarily disclosed were there. Based on the trial court's conclusion, we presume the court doubted Officer Boyd's description of Garcia's demeanor and disagreed that the facts stated by Deputy Boyd gave rise to more than a mere hunch or suspicion that the guns in Garcia's possession were stolen. *See Ross*, 32 S.W.3d at 853; *see also Davis*, 947 S.W.2d at 244. From the testimony at the hearing, the trial court could have reasonably found that Deputy Boyd's testimony about Garcia's demeanor was a pretext and the resulting investigation into the serial numbers of the guns was just the sort of fishing expedition clearly prohibited by law. *See Davis*, 947 S.W.2d at 243. Because the trial court's decision was based on its determination of Deputy Boyd's credibility, we must defer to it. *See Wiede*, 214 S.W.3d 24–25; *see also Martinez*, 348 S.W.3d at 922–23. In short, we cannot conclude that the trial court erred in concluding that there were no facts articulated by Deputy Boyd that justified extending Garcia's temporary detention beyond the scope of the initial purpose of the stop, i.e., the traffic violation. *See Davis*, 947 S.W.2d at 244. Garcia's arrest and the resulting search violated his rights, and the evidence seized as a result was

7

therefore excludable. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). In granting the motion to suppress on this basis, the trial court was correct under the law.

The State argues that Deputy Boyd was within his rights to secure the weapon on Garcia's person for purposes of his safety and suggests that this justification extended to his inquiring with dispatch about whether all of the guns were stolen. The State argues that the trial court's conclusion that "[Deputy] Boyd had no reasonable suspicion the weapons were stolen" was therefore "immaterial." It is true that an officer's safety is paramount and justifies a temporary detention and search, and to that end, we agree with the State that Deputy Boyd was justified in holding the weapons until the traffic stop was concluded in order to protect himself. *See Terry v. Ohio*, 392 U.S. 1, 24 (1968). But because the facts did not support a reasonable suspicion that the weapons were stolen, Deputy Boyd exceeded the scope of his safety-based justification and violated Garcia's rights when he prolonged the traffic stop to radio dispatch about the ownership of the weapons. In short, we are not persuaded by the State's argument in this regard.

The State next argues that Deputy Boyd was "legally" justified in calling in "the weapon's identifiers to determine if they were stolen." In support of this argument, the State points to holdings by the court of criminal appeals allowing officers to run warrant, license, and registration checks in the course of a routine traffic stop even if the officer has no particularized suspicion that the driver might have a warrant or the vehicle might be stolen. *See Davis*, 947 S.W.2d at 245 n.6; *see also Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). These cases involve clearly delineated exceptions to the usual requirement that a search requires particularized suspicion of criminal conduct, and

8

we are not persuaded to create an additional exception to cover the circumstances of this case. The mere possession of a gun is not, in and of itself, a criminal offense. *Robinson v. State*, 236 S.W.3d 260, 270 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also* U.S. CONST. amend. II; *Gonzalez v. State*, No. 13–08–00685–CR, 2011 WL 2652162, at *9 (Tex. App.—Corpus Christi July 7, 2011, pet. ref'd) (mem. op., not designated for publication). We decline to create a blanket exception under which a traffic officer could routinely confiscate and verify the legality of a driver's weapon absent particularized suspicion that the weapon is stolen. And here, as discussed above, we defer to the trial court's determination that Deputy Boyd's testimony stated no facts that would give rise to such a particularized suspicion.

In sum, we conclude that the trial court properly granted Garcia's motion to suppress. The State's issue is overruled.

## IV. Conclusion

We affirm the order of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 5th
day of September, 2013.

9