**Henry Jefferson HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–01048–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 28, 1997.

Carl R. Pruett, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Before YATES, HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Justice.

Appellant, Henry Jefferson Hill, was arrested and charged with the offense of possession of marijuana. Prior to trial, appellant filed a motion to suppress the evidence discovered in the search of his luggage. After an evidentiary hearing, the trial court overruled the motion. Appellant then pleaded guilty, but reserved the right to appeal the suppression issue. The trial court assessed appellant's punishment at five years deferred adjudication probation and a $1000.00 fine. We affirm.

Appellant's sole point of error contends the trial court erred in overruling his motion to suppress evidence. He claims the evidence against him was illegally obtained and admitted in violation of Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure. When reviewing a ruling on a motion to suppress evidence, this Court will examine the evidence in the light most favorable to the trial court's ruling. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). Unless there is a clear showing of an abuse of discretion, the trial court's ruling on the admissibility of the evidence should not be reversed. *Erdman v. State,* 861 S.W.2d 890, 893 (Tex.Crim.App. 1993).

On April 17, 1994, Officers Rudolph Gomez and Billy Corley of the Houston Police Department were monitoring the Amtrak station for narcotics traffic. The officers observed appellant enter the train station and purchase a ticket. Appellant then walked into the passenger waiting area, placed his bags at one end of a bench, and took a seat on the opposite end of the bench, far away from his luggage.[1] While appellant was waiting for his train, the officers made an unre-

---

1. According to appellant, he moved to the other end of the bench to obtain a better view of a television set.

lated narcotics arrest in his immediate vicinity. Officer Gomez testified that appellant observed the arrest and appeared uncomfortably nervous. After the officers led the arrested individual to the enclosed baggage area, appellant continued to scan the lobby, frequently glancing toward the room where the first narcotics suspect was being held.

After determining from the ticket counter that appellant's destination was Montgomery, Alabama, the officers continued to keep him under surveillance.[2] When the train arrived, the officers observed appellant "rushing" toward the boarding platform, and Gomez intercepted appellant as he was exiting the waiting area. He showed appellant his badge, identified himself as a Houston police officer, and asked if he could speak with him. Appellant agreed.

▮ The officer asked to see his ticket and appellant complied. The $96.00 ticket was in name of Henry J. Hill, and had been purchased with cash. When Gomez asked to see appellant's identification, he noticed appellant's hands shaking as he produced his Texas driver's license. When asked if he had personally packed all three bags of his bags, appellant replied that he had only packed one. Gomez then advised appellant that he was conducting a narcotics investigation. When Gomez asked if he could look in appellant's bags, appellant replied that he preferred the officer not search his bags. Gomez then asked appellant if he had any objection to a narcotics detection dog sniffing the bags. Appellant consented to the dog-sniff.[3] Appellant was then escorted to the baggage area of the station where Officer Corley had a narcotics dog sniff the bags. When the dog alerted on two of the bags, the officers forced the luggage open and recovered seven bundles of marijuana.

▮ Appellant contends that when Officer Gomez asked if he could search appellant's luggage, the consensual "encounter" was transformed into an "investigative detention." Interactions between police and citizens fall within three categories—encounter, detention, and arrest. Police officers may approach a citizen and talk to him without *any* suspicion so long as these encounters are consensual and the citizen is not involuntarily delayed. *Taylor v. State*, 820 S.W.2d 392, 395 (Tex.App.—Houston [14th Dist.] 1991, no pet.). An investigative detention occurs when the police stop and briefly detain a person to ascertain his identity, reason for being in the area, or other such similar inquiry. *Amores v. State*, 816 S.W.2d 407, 412 (Tex.Crim.App.1991). Before a detention is justified, the officer must possess "reasonable suspicion" to detain the suspect, *i.e.*, the officer must have specific, articulable facts, which in light of his experience and general knowledge, together with rational inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen stopped for investigation. *Brem v. State*, 571 S.W.2d 314, 318 (Tex.Crim.App.1978). The behavior of the suspect need not suggest the commission of a particular offense; any sufficiently suspicious criminal activity may justify a stop. *Molina v. State*, 754 S.W.2d 468, 473 (Tex.App.—San Antonio 1988, no pet.). However, the officer must possess something more than an inarticulate hunch. *Troncosa v. State*, 670 S.W.2d 671, 676 (Tex.App.—San Antonio 1984, no pet.). To justify a warrantless arrest, the State has the burden to prove probable cause existed when the officer made the arrest. *Segura v. State*, 826 S.W.2d 178, 182 (Tex.App.—Dallas 1992, pet. ref'd). Probable cause for an arrest exists the moment facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a

---

**2.** Officer Gomez initially testified that the appellant's destination was Mobile, Alabama. The officer later admitted that he could not remember appellant's exact destination, but that in any case, it was a high demand area for narcotics.

**3.** Appellant disputed the testimony of Officer Gomez on this point and said that he did not consent to having a narcotics dog sniff his luggage. However, the trial court is the sole fact finder in a suppression hearing, and may believe all, part, or none of any witness' testimony. *Melugin v. State*, 908 S.W.2d 12, 16 (Tex.App.—Houston [1st Dist.] 1995, no pet.).

crime. *Smith v. State*, 739 S.W.2d 848, 852 (Tex.Crim.App.1987).

Relying upon *Holladay v. State*, appellant argues that (1) he was detained when police asked for consent to search his bags; (2) the police had no reasonable suspicion to justify his detention; and (3) the contraband discovered in his luggage should have been suppressed. 805 S.W.2d 464, 472 (Tex.Crim. App.1991). In *Holladay*, narcotics officers confronted the defendant shortly after he landed on a flight from Miami to Houston. Holladay agreed to talk to the officers and answered a short series of questions. The police then asked the suspect if they could search his luggage and advised him that he did not have to consent. The court held that the "request for permission to search appellant's luggage converted this initial encounter into an investigative one, albeit very brief." *Id.*, at 472.

■ Appellant seems to suggest that the Court of Criminal Appeals established a per se rule in *Holladay* that when a police officer asks for consent to search, he must have reasonable suspicion to justify a temporary detention. Certainly, there are decisions out of this court and others which tend to support appellant's contention.[4] However, three months after the Court of Criminal Appeals decided *Holladay*, the United States Supreme Court handed down *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The court held in *Bostick* that even when officers have no basis for suspecting an individual of wrongdoing, they may still ask him questions, ask to see his identification, *and ask if he would consent to a search of his luggage.* The encounter is not considered a detention unless, under the circumstances, a reasonable person would conclude he was not at liberty to decline the officer's request. A request to search does not automatically transform a consensual encounter into a police detention under the federal constitution. *Prodhomme v. State*, 839 S.W.2d 494, 496 (Tex.App.—Corpus Christi 1992, no pet.).

■ Appellant, however, brings his point of error not under the Fourth Amendment, but under Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure. Because the people of this state have the inherent power to reserve for themselves greater rights and liberties than are afforded to them under the federal constitution, we are not bound by the decisions of the United States Supreme Court when analyzing and interpreting Article I, Section 9 of the Texas Constitution. *Heitman v. State*, 815 S.W.2d 681, 690 (1991). A plain reading and comparison of the language of the Fourth Amendment and Article I, Section 9, however reveals no substantive difference, and since *Heitman*, the Court of Criminal Appeals has identified very few instances where the Texas Constitution affords greater protection than the Fourth Amendment.[5] *Johnson v. State*, 912 S.W.2d 227, 232 (Tex.Crim.App.1995).

However, in 1991, the Court of Criminal Appeals found under both the Fourth Amendment[6] *and* Article I, Section 9 that evidence discovered under circumstances strikingly similar to the facts presented here to be inadmissible. *Crockett v. State*, 803 S.W.2d 308 (Tex.Crim.App.1991). In *Crockett*, two Houston police officers were monitoring the Amtrak station for narcotics traffic. The appellant in that case was traveling to

---

**4.** *See Arroyo v. State*, 881 S.W.2d 784, 787 (Tex. App.—Houston [14th Dist.] 1994, no pet.); *State v. Hamlin*, 871 S.W.2d 790, 793 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Jennings v. State*, 846 S.W.2d 361, 364 (Tex.App.—Houston [14th Dist.] 1992), vacated on other grounds, 890 S.W.2d 809 (Tex.Crim.App.1995). The First Court of Appeals has made similar holdings in *Melugin*, 908 S.W.2d 12 at 15; *Walton v. State*, 827 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

**5.** *See Autran v. State*, 887 S.W.2d 31, 41–42 (Tex. Crim.App.1994) ( a plurality of judges held that the inventory exception to a warrantless search

will not justify the search of closed or locked containers within a vehicle); *Richardson v. State*, 865 S.W.2d 944, 953 (Tex.Crim.App.1993) (the court held that the use of a pen register *might* be a search under the Texas Constitution). *Cf. State v. Daugherty*, 931 S.W.2d 268, 269–70 (Tex.Crim. App.1996) (a plurality held the doctrine of inevitable discovery is incompatible with the statutory exclusionary rule found in Article 38.23 of the Texas Code of Criminal Procedure).

**6.** The decision in *Crockett* preceded the Supreme Court's decision in *Bostick* by four months.

Chicago, had purchased the ticket with cash, and his companion was observed suspiciously "scoping the lobby for unknown purposes." *Id.*, at 310. The officers approached the appellant as he walked toward the boarding area. They identified themselves as police officers and asked if they could speak with him. After asking the appellant for some identification, the officers testified that he seemed nervous as he produced his driver's license. At that point, the officers revealed that they were investigating narcotics traffic and requested permission to search the appellant's luggage. When the defendant asked if the officer had a warrant, the officer replied that he did not, but asserted that he had the right to detain the defendant long enough for a dog to sniff his bags. The defendant then agreed to move his luggage to an area where a trained police dog sniffed the luggage and alerted on the bags. When the bags were opened, police discovered a large bundle of marihuana.

 The court found that under both the federal and state constitutions, "the suspicious conduct relied upon by law enforcement officers must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Crockett*, 803 S.W.2d at 311. The court concluded that, because the officers could have had no reasonable suspicion concerning the defendant's activities, the suspicious conduct relied upon by the officers to detain Crockett was not sufficiently distinguishable from that of an innocent person under the same circumstances so as to clearly set him apart. *Id.* at 313. Under the circumstances of the case now before us, if appellant was detained, we cannot say the officers' actions were supported by reasonable suspicion.

 Without any articulable suspicion, a police officer may approach a person and make inquiries. To determine whether a person is temporarily detained under Article

I, Section 9 of the Texas Constitution, the court must examine the stop from the viewpoint of a "reasonable person." If a reasonable person, under similar circumstances, would conclude that he was obliged to submit to police authority or was not free to leave, a detention has occurred under Article I, Section 9 of the Texas Constitution. *State v. Grant*, 832 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762–63, 80 L.Ed.2d 247 (1984). Further, it is necessary in a well-ordered society that citizens submit to the lawful authority of law enforcement officers, and it is not expedient that they should question or dispute the lawfulness of an officer's actions while on the street except in the most extreme circumstances.[7] Accordingly, in interactions between citizens and police officers, the distinction between a solicitation and a command may not be readily apparent.[8]

 The question then becomes, considering all of the circumstances, whether the police officer's conduct "would have communicated to a reasonable person that he was not at liberty to ignore [the request] and go about his business." *Mitchell v. State*, 831 S.W.2d 829, 832 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). The moment a law enforcement officer identifies himself as a police officer by formal announcement, the display of official identification, or by the wearing a distinctive uniform, his authority is apparent and all subsequent requests by the officer that would stop or delay a citizen's progress in a public place may, depending upon the circumstances, constitute a detention. A reasonable person might conclude, for example, that he was not free to leave if an officer (1) approached him in an airport, announced that he was conducting an investigation, and by his actions suggested the citi-

**7.** *See* TEX. PENAL CODE ANN. §§ 9.31(c) and 38.03(b).

**8.** A police officer may, for example, say to a person, "Could you stand over here, please."

Depending upon the circumstances, the officer may be extending an invitation, or he may be framing a command in polite language.

zen was the subject of such investigation; (2) asked to see his ticket and identification and failed to return those items; (3) asked the citizen to accompany him to a secluded interview room; and then (4) retrieved the person's luggage without his consent after it had already been checked into the airline. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). An officer may help dispel any unintended suggestion that compliance with his request is mandatory by informing the individual that (1) he is free to leave, (2) that he need not answer any questions, and (3) that he need not consent to a search of his luggage.

Here, Officer Gomez identified himself as a police officer and told appellant he was conducting a narcotics investigation. After asking to see his identification and ticket, Gomez returned appellant's identification, but the record is silent about whether he also returned his ticket. Gomez asked to search the appellant's luggage. He did not tell appellant that he was free to leave or that he had the right to refuse the request to search.[9] All of these factors militate in favor of the appellant. However, because appellant refused the officer's request to search, we need not decide whether a reasonable person under these same circumstances would have concluded that he was obliged to deliver up his bags for inspection. Where, as here, the record affirmatively demonstrates that appellant was aware that he did not have to consent to the officer's request, we will not proceed to analyze the issue under the "reasonable man" hypothesis.

■ Here, we know appellant knew he had a right to refuse consent because he did so. The "reasonable man" hypothetical construct is a useful standard for determining when an encounter changes into a detention. However, when a suspect clearly manifests his understanding and belief that he is not under police detention, we will not employ a

legal fiction to conclude otherwise. When appellant refused Officer Gomez's request for consent to search his luggage, he demonstrated his understanding that the request for consent to search was a petition, not a command. Under the facts presented here, we find Gomez's request for consent to search did not transform the encounter into a detention under Article I, Section 9 of the Texas Constitution.

■ Because appellant did consent to a canine sniff of his luggage, we must determine whether Officer Gomez's request for permission to conduct a canine sniff amounted to a detention requiring reasonable suspicion under the Texas Constitution. As under the Fourth Amendment,[10] we find a canine sniff is not a "search" under Article I, Section 9 of the Texas Constitution. Odor is the detectable evidence of molecular migration from solids and liquids into the atmosphere. It occurs without assistance from the police, and smells have not traditionally been regarded as something in which a person could have a reasonable expectation of privacy. *See Delosreyes v. State*, 853 S.W.2d 684, 689 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

■ Although a canine sniff is not a search, this does not resolve the question of whether appellant was detained because this is not a case where the narcotics dog fortuitously alerted on the luggage of a passing traveler. Appellant was requested to take his luggage to a specific location for sniffing. This diversion, and attendant delay, are equivalent to a detention if a reasonable person under the same circumstances would have felt obliged to take or leave his bags for sniffing.

■ Appellant had just refused an earlier request to search the contents of his luggage, and the record does not suggest there was any change in circumstances between the

---

**9.** Officer Gomez testified at the suppression hearing that he would have permitted appellant to leave on the train, but not with his luggage. We see no constitutional distinction between appellant and his luggage—if either is detained, both are detained. However, under Article I, Section 9 of the Texas Constitution, the determination of whether a detention or seizure has occurred depends not upon the subjective beliefs or unstated

intentions of the police officer, but rather upon whether a reasonable person would have believed he was free to leave under the circumstances. *Johnson,* 912 S.W.2d at 236.

**10.** *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

request to search and the request for a dog sniff, that would have caused a reasonable person to conclude that he could not also refuse the second request and simply walk away. However, this court has previously held that where a person refuses a request for consent to search luggage, the police may not then seek consent for a canine sniff. *State v. Hamlin,* 871 S.W.2d 790, 795 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (opinion on rehearing). In *Hamlin,* this court said: "The Court of Criminal Appeals appears to be saying that if a defendant says 'no' to the initial request for a luggage search, he must be free to go, and the State cannot go further without a 'detention' occurring." *Id.* The panel did not cite any authority for this position and we are not persuaded by its rationale.[11] While police may not make repeated requests to interview a person in custody without violating his Fifth Amendment right to counsel,[12] we know of no doctrine under either the Fourth Amendment or Article I, Section 9 of the Texas Constitution which would prohibit police from asking a suspect, who is not in custody, if he would consent to a canine sniff after he has refused a request to search his luggage. The fact that a guilty person may choose to cooperate with police and accede to their requests in the unsuccessful hope of allaying their suspicions does not render his conduct involuntary. Accordingly, we find that *Hamlin* was wrongly decided.

Appellant's sole point of error is overruled, and the judgment of the trial court is affirmed.

---

11. The *Hamlin* opinion on rehearing has been incorrectly reported as an en banc decision. We have retrieved the original opinion on rehearing from the court's archives and have discovered that the State's motion for rehearing en banc was overruled by a *panel* of justices as permitted by Tex.R.App. P. 79(e). The opinion on rehearing, therefore, was issued not by the court sitting en banc, but by a divided panel consisting of Justices Murphy, Sears, and Draughn with Justice Draughn dissenting.

12. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).