ACCEPTED
03-14-00155-CR
4948430
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 12:33:46 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00155-CR

**IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/20/2015 12:33:46 PM
JEFFREY D. KYLE
Clerk

**JERON DEANGELO NEAL,
APPELLANT**

**vs.**

**THE STATE OF TEXAS,
APPELLEE**

APPEAL FROM THE 390TH JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-205121

**STATE'S BRIEF**

**Rosemary Lehmberg**
District Attorney
Travis County, Texas

**M. Scott Taliaferro**
Texas Bar No. 00785584
Assistant District Attorney
Director, Appellate Division
District Attorney's Office
P.O. Box 1748
Austin, Texas  78767
Phone: (512) 854-3626
Fax: (512) 854-4810
scott.taliaferro@traviscountytx.gov
AppellateTCDA@traviscountytx.gov

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................. iv

STATEMENT OF THE CASE......................................................................... iv

STATEMENT OF FACTS ....................................................................3

SUMMARY OF THE ARGUMENTS ....................................................6

THE STATE'S REPLY TO THE FIRST POINT OF ERROR...............................7

I.    The standard of review...................................................................7

II.   Relevant law ....................................................................................8

III.  The suppression hearing and the court's findings of fact and conclusions of law .......................................................................13

IV.   The trial court's determination about the lawfulness of the detention is supported by the record ..............................................................16

V.    The trial court properly determined that the search of the appellant's vehicle, his arrest, and the search of his person were proper.........................22

VI.   The evidence supports the trial court's determinations about the lawfulness of the appellant's detention, search, and arrest..............................27

PRAYER ...................................................................................................29

CERTIFICATE OF COMPLIANCE....................................................30

CERTIFICATE OF SERVICE .............................................................30

# TABLE OF AUTHORITIES

**Cases**

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002). ...................................11

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)........................ 7, 8, 11

*Francis v. State*, 922 S.W.2d 176 (Tex. Crim. App. 1996) ....................................10

*Glazner v. State*, 175 S.W.3d 262 (Tex. Crim. App. 2005)....................................12

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) .....................................15

*Hill v. State*, 951 S.W.2d 244 (Tex. App.—Houston [14th Dist.] 1997, no pet.) ...11

*Johnson v. State*, 68 S.W.3d 644 (Tex. Crim. App. 2002). .......................... 8, 25, 31

*Maryland v. Macon*, 472 U.S. 463 (1985) .................................................................14

*Michigan v. Long*, 463 U.S. 1032 (U.S. 1983) ........................................................12

*Miller v. State*, 608 S.W.2d 684 (Tex. Crim. App. 1980).......................................13

*O'Hara v. State*, 27 S.W.3d 548 (Tex. Crim. App. 2000)............................... 11, 14

*Osbourn v. State*, 92 S.W.3d 531 (Tex. Crim. App. 2002)......................................13

*Powell v. State*, 63 S.W.3d 435 (Tex. Crim. App. 2001) ........................................14

*Ramirez v. State*, 672 S.W.2d 480 (Tex. Crim. App. 1984) ....................................11

*Romero v. State*, 800 S.W.2d 539 (Tex. Crim. App. 1990)........................... 8, 9, 25

*Serrano v. State*, 123 S.W.3d 53 (Tex. App.— Austin 2003, pet. ref'd) .................9

*Spillman v. State*, 824 S.W.2d 806 (Tex. App.—Austin 1992, pet. ref'd) ....... 12, 13

*State v. Guzman*, 959 S.W.2d 631 (Tex. Crim. App. 1998) ....................................13

*State v. Perez*, 85 S.W.3d 817 (Tex. Crim. App. 2002) ........................................9, 10

*State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000) ........................... 8, 25, 27, 30

*State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002) ......................................9

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................10

*U.S. v. Johns*, 469 U.S. 478 (1985) .............................................................13

*Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000) ........................................14

*Willover v. State*, 70 S.W.3d 841 (Tex. Crim. App. 2002) ......................................9

*Woodward v. State*, 668 S.W.2d 337 (Tex. Crim. App. 1982) ................................15

## STATEMENT REGARDING ORAL ARGUMENT

The State believes that oral argument is unnecessary because the briefs filed by the parties adequately present the facts and legal arguments. However, if the Court grants the appellant's request for oral argument, the State respectfully requests that the Court also permit the State to provide oral argument.

## STATEMENT OF THE CASE

Austin Police Department (APD) officers arrested the appellant on September 28, 2012. CR 7.[1] On November 1, 2012, the State charged the appellant by indictment with two counts of Aggravated Robbery. CR 12-13. The indictment included an enhancement for the appellant's prior felony conviction. CR 13.

On February 25, 2014, a jury was sworn and a trial on the merits began. 8 RR 1. The jury found the appellant *guilty* on both counts of aggravated robbery (CR 163, 165), and it found the enhancement allegation for the prior felony conviction to be *true* (CR 175-76). On March 5, 2014, the jury assessed punishment at twenty-two and one-half years of confinement in the Institutional Division of the Texas Department of Criminal Justice. CR 175-76. That same day, the court certified the appellant's right to appeal (CR 177), and the appellant filed his Notice of Appeal on the following day (CR 195).

---

[1]A citation in the form of "CR *y*" refers to page *y* of the Clerk's Record, and a citation in the form of "*x* RR *y*" refers to page *y* of volume *x* of the Reporter's Record.

NO. 03-14-00155-CR

IN THE COURT OF APPEALS
THIRD DISTRICT
AUSTIN, TEXAS

JERON DEANGELO NEAL,
APPELLANT

vs.

THE STATE OF TEXAS,
APPELLEE

APPEAL FROM THE 390TH JUDICIAL DISTRICT COURT
TRAVIS COUNTY, TEXAS
CAUSE NUMBER D-1-DC-12-205121

STATE'S BRIEF

TO THE HONORABLE COURT OF APPEALS:

The State of Texas, by and through the District Attorney for Travis County,

respectfully submits this brief in response to that of the appellant.

## STATEMENT OF FACTS

Alicia Otto and her friends were at Mr. Tramps, an Austin sports bar, when a man approached their table just before last call, pointed a gun at them, and ordered them to give him everything. 8 RR 24, 82. Her friend Charles, not seeing the weapon and mistaking the man for a homeless person, pushed the appellant and told him to "get the fuck out of here." 8 RR 85. The appellant then grabbed Otto's purse and fled. 8 RR 25, 83. A bartender and other patrons chased after the appellant, but they stopped their pursuit once the appellant fired a round from his black revolver. 8 RR 25, 83, 86. The suspect got into the passenger seat of a waiting vehicle, described as a black SUV—possibly a Jeep—and sped off into the night. 2 RR 13, 72; Court's Exhibit 4 (15 RR 125).

Once APD officers arrived, Otto and other witnesses told them what they saw. 8 RR 38. Otto told officers that her stolen purse contained her wallet, ID cards, credit cards, $44 in cash, and her cell phone. 2 RR 15, 8 RR 36. Witnesses described the thief as black male. 8 RR 86.

About six hours later that same day, just before 8:00 a.m., APD received a call about a disturbance. 9 RR 28. A woman reported to a 911 dispatcher that her son, the appellant, was outside the day care center where she worked, that he was bipolar, and that he may cause a disturbance at the day care center. 2 RR 56. APD Officers Flanery and Torres responded to the address, but they could not

3

immediately find the day care center, which was located somewhere in a strip mall with a large parking lot. 9 RR 29. The 911 caller later informed dispatch that her son may be armed and that he was in a black Ford Explorer. 2 RR 57.

Officers Flanery and Torres located the appellant's black Ford Explorer after receiving the updated information, and they approached it in full uniform. 9 RR 30-31. Officer Flanery walked to the driver's side door, where he noticed that the appellant was in the driver's seat, along with a woman in the back seat, and both of them were asleep. 9 RR 31-32. As he was looking for a weapon before waking the vehicle's occupants, Officer Flanery noticed a hand-rolled cigarette in the appellant's left hand. 9 RR 32. Officer Flanery then knocked on one of the vehicle's windows, thereby waking the appellant. 9 RR 33-34.

The appellant looked at Officer Flanery and started "fiddling with the ignition," placing Officer Flanery in fear for his safety. 2 RR 24, 65. Officer Flanery then opened the driver's door and instructed the appellant to exit the vehicle. 2 RR 27. The appellant exited the vehicle and Officer Flanery held the appellant's hands behind his back as he frisked him for weapons. 2 RR 27. At that point, Officer Flanery noticed that the appellant was still holding the hand-rolled cigarette, and he remarked to the other officer that he thought it might be a marijuana cigarette. 2 RR 28. In addition, he caught a whiff of what was obviously the smell of marijuana. 2 RR 28. Once the appellant's vehicle door had opened,

4

Officer Flanery determined that there was marijuana or contraband inside the vehicle. 2 RR 28-29, 33-34. Officer Flanery then placed the appellant in the back of his patrol car for the sake of safety and for the sake of the investigation. 2 RR 30-31. Officer Flanery then discovered the marijuana cigarette in plain view on the ground, as the appellant had released the cigarette at about the time that Officer Flanery had applied the handcuffs. 2 RR 33. He then searched the appellant's vehicle, where he discovered a loaded .38 caliber revolver in the side panel of the front driver's side door. 2 RR 34. It contained five live rounds and one spent round. 2 RR 34.

Officer Flanery then arrested the appellant. 2 RR 36-37. Upon arriving at Central Booking, Officer Flanery conducted a search of the appellant's person, thereby discovering several credit cards bearing the name—*Alicia D. Otto*—of the robbery victim. 2 RR 37-38.

## SUMMARY OF THE ARGUMENTS

The record supports the trial court's determination that the detention was lawful. Based on the information received from the dispatcher—that the appellant was outside of a day care center, that he was mentally ill and possibly armed, and that he may cause a disturbance—the officer had a reasonable, articulable suspicion that the defendant had committed, or was about to commit, a crime. Upon detecting the smell of a plainly visible marijuana cigarette, the officer lawfully searched the appellant's vehicle, thereby discovering a loaded firearm resting in plain view in the driver's-side door panel. Pursuant to these discoveries, the search and arrest of the appellant was lawful, and evidence of the robbery was admissible.

Attacks on the officer's credibility do not negate the trial court's determinations at the suppression hearing. In applying the appropriate standard of review by granting deference to the trial court's findings of fact and applications-of-law-to-fact questions turning on credibility, the appellant's point of error should be overruled.

**THE STATE'S REPLY TO THE FIRST POINT OF ERROR**

The trial court properly denied that portion of the appellant's motion to suppress that is at issue. The appellant was lawfully detained, the vehicle search was legally justified, and additional evidence was seized incident to the lawful arrest.

Argument and Authorities

The appellant argues that the trial court erred in denying the appellant's motion to suppress certain evidence, and he asks this Court to reverse his judgment and sentence and remand his case to the trial court for new proceedings. App. Br. at 7. Specifically, the appellant argues that the arresting officer lacked credibility and was not shown to possess knowledge or skills sufficient to support his determination that the appellant possessed marijuana. App. Br. at 10. In addition, the appellant argues that the officer lacked probable cause to arrest the appellant because his prior belief that the appellant had an outstanding arrest warrant was incorrect. App. Br. at 10. The evidence, however, indicates that the officer was justified in detaining and arresting the appellant, and the trial court properly denied the appellant's motion to suppress the evidence at issue on appeal.

## I.    **The standard of review**

A bifurcated standard of review is used to evaluate a trial court's ruling on a motion to suppress. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Total deference is afforded to the trial court's determination of historical

7

facts supported by the record as well as application-of-law-to-fact questions that turn on evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). The reviewing court does not engage in its own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Rulings on mixed questions of law and fact that do not turn on witness credibility are reviewed *de novo*. *Johnson*, 68 S.W.3d at 652-53. This generally includes the trial court's application of the law to the facts. *Carmouche*, 10 S.W.3d at 327; *Romero*, 800 S.W.2d at 543. A reviewing court is not required to give deference to the legal ruling of the trial court and is not bound by it. *Serrano v. State*, 123 S.W.3d 53, 58 (Tex. App.—Austin 2003, pet. ref'd). The trial court's legal ruling should be upheld if correct on any theory of the law applicable to the case, even if the trial court gives the wrong reason. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Romero*, 800 S.W.2d at 543.

## II.    Relevant law

The Court of Criminal Appeals has recognized three distinct categories of interactions between police officers and citizens: encounters, investigative

8

detentions, and arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Police officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *Perez*, 85 S.W.3d at 819. In an encounter, police are not required to possess any particular level of suspicion because citizens are under no compulsion to remain. *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996). However, in order for investigative detentions and arrests to be legal, particular levels of suspicion are required. *Id*.

An officer may conduct a brief investigative detention, or "*Terry* stop," when he has a reasonable suspicion to believe that an individual is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). The behavior of the suspect need not suggest the commission of a particular offense; any sufficiently suspicious criminal activity may justify a stop. *Hill v.*

9

*State*, 951 S.W.2d 244 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

Specifically, an officer may, during the course of a lawful investigatory detention, conduct a limited search of the suspect for weapons when it is reasonably warranted for his own safety or the safety of others. *Terry*, 392 U.S. at 27; *Ramirez v. State*, 672 S.W.2d 480, 482 (Tex. Crim. App. 1984). The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. *Carmouche*, 10 S.W.3d at 329. The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). Citing *Terry*, the Court of Criminal Appeals has recently emphasized that "there is no requirement that a police officer feel personally threatened or be 'absolutely certain' that the suspect is armed in order to conduct a pat-down search." *Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005).

Such protective searches are not limited to a suspect's person since "roadside encounters between police and suspects are especially hazardous." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). As the U.S. Supreme Court has held:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the

10

rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Id.*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21), *accord Spillman v. State*, 824 S.W.2d 806, 810 (Tex. App.—Austin 1992, no pet.).

A warrantless search of a car is valid if it is based on probable cause to believe that it contains contraband. *U.S. v. Johns*, 469 U.S. 478 (1985); *State v. Guzman*, 959 S.W.2d 631 (Tex. Crim. App. 1998). An officer's detection of the odor of marijuana emanating from a vehicle gives rise to probable cause to search an automobile. *Miller v. State*, 608 S.W.2d 684 (Tex. Crim. App. 1980). While smelling the odor of marihuana smoke may not be an event normally encountered in daily life, it requires limited, if any, expertise to identify. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). As the Court of Criminal Appeals has held, "Although it cannot be presumed that everyone is capable of identifying marihuana by smell, a witness who is familiar with the odor of marihuana smoke through past experiences can testify as a lay witness that he or she was able to recognize the odor." *Id.* Additionally, the admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances

11

confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *O'Hara*, 27 S.W.3d at 551, quoting *Maryland v. Macon*, 472 U.S. 463, 470-471 (1985). A police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment. *Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). Subjective intentions play no role in an ordinary, probable cause Fourth Amendment analysis. *Id.*

Probable cause to effectuate a warrantless arrest exists when police officers have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). Determining whether probable cause exists concerns "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Woodward v. State*, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982). Probable cause deals with probabilities, requiring "more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Id.* The rule of probable cause seeks to accommodate the sometimes opposing interests of safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts. *Woodward*, 668 S.W.2d at 345-46.

In reviewing whether there was probable cause to make a warrantless arrest, it would be improper for the reviewing court to examine each fact independently, thereby determining that none of the facts standing alone were sufficient to warrant a finding of probable cause. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Instead, the court should examine the totality of the circumstance and determine whether the facts, when taken as a whole, were sufficient to give the officers probable cause to arrest appellant. *Id.*

### III.   The suppression hearing and the court's findings of fact and conclusions of law

On February 7, 2013, defense counsel filed a Motion to Suppress Evidence. CR 33-36. In that motion, counsel argued that police officers lacked probable cause to arrest the appellant, and that any evidence found in the appellant's vehicle or on his person was therefore inadmissible. CR 35. Defense counsel subsequently filed a Brief in Support of Motion to Suppress Evidence. CR 41-43.

On April 12 and 29 of 2013, the court held a pretrial hearing on the appellant's Motion to Suppress. 2 RR 1, 3 RR 1. After hearing the evidence, the court denied the motion as to the items seized by an officer at the scene and at the central booking facility. CR 46. Those items included a marijuana cigarette, a handgun, and credit cards belonging to the robbery victim. CR 45-46. The court granted the motion as to the evidence seized from the appellant's vehicle after

13

officers took him from the scene. CR 46. The suppressed items included additional credit cards and other evidence linking the appellant to the robbery. CR 45-46.

The trial court made the following Findings of Fact:

a) At approximately 8:00 a.m. on September 28, 2012 Austin Police Officer Flanery, while on routine patrol in his police vehicle, received a call from the police dispatcher. The dispatcher related to Officer Flanery that a person purporting to be the mother of the defendant had alleged: She had an argument with her son and feared that he was going to create a disturbance at the day care center she ran. She was concerned that he would be in possession of a handgun. Futhermore, he was mentally ill and not taking his medications and was probably on drugs.

b) Officer Flanery, and another officer, Torres drove to the strip mall shopping center and looked for a disturbance and the defendant. Not seeing either they parked their patrol cars and engaged in a personal discussion. They then drive around the mall and eventually Officer Flanery sees a SUV that matches the description given by the mother. He observes a Black male and Black female asleep in the SUV. The defendant's mother indicates that the SUV is the one her son is in and that the Black male is her son.

c) Officer Flanery approaches the SUV on the driver's side and knocks on the window, awakening the defendant. He observes the defendant "fiddling" with the ignition area on the steering wheel and fears the defendant is going to start the motor and drive off. He opens the door to get the defendant out and observes what he believes may be a marijuana cigarette in the hand of the defendant. He also smells, as the door is opened, when his training and experience have taught him, a moderate odor of marijuana.

d) Officer Flanery frisks the defendant for weapons, handcuffs him, and places him in his patrol car. After placing the defendant in the patrol car the officer picks up from the ground the cigarette the defendant had dropped and believes it to be marijuana.

14

e) With the defendant under arrest Officer Flanery checks the inside of the vehicle and finds a .38 caliber revolver, which is loaded but for one expended cartridge.

f) Officer Flanery transports the defendant to the central booking facility and since he did not search him previously, searches him before taking him into the jail. At this time he finds several credit cards which do not belong to the defendant in the defendant's pocket.

g) Approximately two hours after the defendant has been arrested, Detective Glasgow, other detectives, and a crime scene unit enter the defendant's vehicle and search it. They find more credit cards, and other evidence linking the defendant to a robbery that had been committed earlier that day. The vehicle is properly marked in a marked space at the mall. The mall address is listed on the police computer as the defendant's address. Detective Glasgow does not procure a search warrant though testifies that he could have if he had so wanted.

CR 44-45.

The court also made the following Conclusions of Law:

a) Based on the information received from the dispatcher, as well as from the defendant's mother at the scene, the officer had a reasonable articulable suspicion that the defendant had or was about to commit a crime. (*Terry v. Ohio*)

b) Upon observing the cigarette that the officer thought was a marijuana cigarette and detecting the odor of marijuana the officer had the right to further investigate. In light of the report from the defendant's mother that the defendant was mentally ill, not taking his medications, and might have a firearm, it was reasonable to handcuff the defendant and have him sit in the patrol car.

c) The marijuana cigarette that was tossed on the ground by the defendant was legally seized by the officer.

15

d) The officer had the right to conduct a cursory search of the driver's area of the vehicle for more marijuana and the handgun the defendant's mother had alleged he might possess.

e) The handgun, found where the defendant was seated was legally seized.

f) The credit cards found by the officer before he brought the defendant into the central booking area were legally seized.

g) The subsequent search of the defendant's vehicle, several hours after the defendant was arrested, when it was legally parked, there was no way the defendant could operate it, with several officers on the scene, and a search warrant could have been obtained, does not fall within the exceptional circumstances that permit a warrant less search of a vehicle.

CR 45-46.

The claim on appeal is that the trial court erred in denying part of the appellant's motion to suppress evidence. *See* App. Br. at 7 (stating such and citing only that portion of the Reporter's Record—Volume 2—that documented the testimony from a pretrial suppression hearing).

## IV. <u>The trial court's determination about the lawfulness of the detention is supported by the record</u>

The appellant argues only, "There was insufficient probable cause for Appellant's arrest, and therefore any evidence seized as a result thereof was illegally obtained." App. Br. at 7. The appellant does *not* argue that the initial encounter and detention were illegal. *See* App. Br. Nonetheless, the State is

addressing the detention issue since it flows into the rationale for the court's ruling on the motion to suppress.

As the evidence shows, the officers were justified in detaining the appellant and conducting a safety search for weapons. The officers had information that a subject matching the appellant's description was armed, mentally unstable, and parked in front of a day care center, which the appellant had threatened. CR 44-45.

Upon knocking on the appellant's vehicle window, the appellant went for the SUV's ignition, placing the officers in fear for their safety. In addition, Officer Flanery detected the smell and look of marijuana, which he recognized based on his training and experience. Officer Flanery also discovered the marijuana cigarette in plain view on the ground, and the appellant lacked any reasonable expectation of privacy as to the cigarette. Due to these facts, a reasonable factfinder could determine that the officers were justified in detaining the appellant, searching him and his car, and placing him under arrest.

During the suppression hearing at issue, Officer Justin Flanery testified that he responded to a call about a disturbance, possibly placed by the appellant's mother, stating that she was worried about her son being outside the day care center at which she worked. 2 RR 18. The call came in at about 7:56 a.m., and the caller reported that her son might have a gun in his vehicle. 2 RR 18. As Officer Flanery testified, he understood that the 911 caller related that:

17

> She was concerned because it was a day care, it was a weekday, and children—it was in the early morning so people were starting to drop off their kids, so for the welfare of the kids she wanted a basically check welfare because the last she saw her son, he had a gun, and with the gun and with the kids at the facility, she was worried about their safety.

2 RR 18. When Officers Flanery and Torres arrived at the address provided, they found a number of businesses and a parking lot in a large strip mall, but they did not yet have a vehicle description or precise location. 2 RR 20-21. Due to the nature of the call, the officers did not leave, but waited in the parking lot for additional information. 9 RR 29.

At 8:23 a.m., the officers learned from dispatch that the person that they were searching for was in a black SUV—possibly a black Ford Explorer. 2 RR 45, 53, 54-55. They also learned that the caller's husband had seen the appellant with a gun on the previous day. 2 RR 45, 60. After receiving that information, Officer Flanery located the day care center, along with a black SUV parked in front of it. 2 RR 20.

Officer Flanery parked behind the SUV, approached it, and saw two people asleep inside of it. 2 RR 21, 55. The appellant was in the driver's seat and a woman, later identified as the appellant's girlfriend, was asleep in the back passenger area. 2 RR 22. Due to the mother's concern that the appellant might be armed and out of concern for his own safety, Officer Flanery looked to see if there was a gun in plain sight before knocking on the vehicle. 2 RR 21, 24, 55. At that

18

time, Officer Flanery saw a hand-rolled cigarette in the appellant's hand. 2 RR 26; 9 RR 32. As Officer Flanery testified, there was a bit of something hanging from where tobacco would normally be. 2 RR 28. As Officer Flanery's video and audio recording system indicated, he told Officer Torres that the cigarette could be a marijuana joint. 2 RR 28.

Officer Flanery was on the driver's side and Officer Torres was on the passenger's side of the vehicle. 2 RR 23. The officers were uniformed and they were wearing their badges, and it was daylight. 2 RR 24, 25. Officer Flanery noted that the individual in the vehicle matched the physical description of the person described by the 911 caller—that of a black male in an SUV outside of this particular day care center at that particular time. 2 RR 25, 63. The subject was also reported as being in the driver's seat, accompanied by his girlfriend, and this information also comported with what the officer saw. 2 RR 64.

Officer Flanery knocked on a window of the SUV. 2 RR 24. The appellant immediately woke up, looked at Officer Flanery, and started "fiddling with the ignition," making Officer Flanery concerned that the appellant might attempt to flee, thereby putting himself and Officer Torres in harm's way. 2 RR 24, 65; 9 RR 34-35. Officer Flanery instructed the appellant to turn off the vehicle. 2 RR 24-25. Officer Flanery opened the driver's door and instructed the appellant to exit the vehicle. 2 RR 25, 26-27.

19

Officer Flanery smelled a "moderate whiff" of stagnate marijuana when he opened the appellant's door, and he testified that "it was obviously a smell of marijuana." 2 RR 28, 9 RR 36. Officer Flanery testified at the suppression hearing that he was familiar with what marijuana looks like, through both his training and his experience. 2 RR 28; 9 RR 35-36. He testified that marijuana has a strong and recognizable smell. 9 RR 36-37. He also testified that he then had reason to believe that there was marijuana or contraband inside the appellant's vehicle at the time that he opened the vehicle door. 2 RR 29; 9 RR 36.

After opening the door, the appellant exited the vehicle, and Officer Flanery held the appellant's hands behind his back as he attempted to frisk him for weapons. 2 RR 27; 9 RR 37. Officer Flanery noticed that the hand holding the cigarette was clenched, and he could feel the tension in the appellant's body as he kept his hands on him. 2 RR 27. The appellant was "trying to say everything is cool" and that he was "trying to get out of here," which the officer, in his five years of police experience, interpreted as an attempt to delay the officer's reaction and to try to fight or flee because "that's what's happened in the past." 2 RR 27-28. The appellant kept leaning away from the officer. 2 RR 29.

Officer Flanery was concerned that something bad might happen, and he asked for Officer Torres's help because of the concern about a weapon and the proximity to the day care center. 2 RR 29. At that point, Officer Flanery detained

20

the appellant and placed him in hand restraints. 2 RR 29. After being detained, the appellant identified himself by name, which Officer Flanery matched to the name that he had received from dispatch. 2 RR 30. Officer Flanery then placed the appellant in the back of his patrol car for the sake of safety and the investigation. 2 RR 31. In this case, Officer Flanery did not conduct a full search of the appellant until after he transported him to Central Booking. 11 RR 16-17. This is because the appellant became very agitated and violent and began kicking the police car at the scene. 2 RR 38, 11 RR 17.

In conclusion, the trial court properly determined that Officer Flanery had reasonable suspicion to detain the appellant, and that the officers were justified in opening the vehicle door and ordering the appellant out pursuant to the doctrines set forth in *Terry v. Ohio* and *Michigan v. Long*. Based on the information received from the dispatcher, the officer had a reasonable, articulable suspicion that the defendant had or was about to commit a crime. Upon observing the cigarette that he thought was a marijuana cigarette and detecting the odor of marijuana, Officer Flanery had the right to investigate further. In light of the report from the defendant's mother that the defendant was mentally ill, not taking his medications, and might have a firearm, it was reasonable to handcuff the defendant and have him sit in the patrol car. In addition, Officer Flanery legally seized the marijuana cigarette that the appellant tossed to the ground, and the appellant did not have any

21

reasonable expectation of privacy in the discarded cigarette. Accordingly, the officers were justified in detaining the appellant and conducting a safety search for weapons.

## V. __The trial court properly determined that the search of the appellant's vehicle, his arrest, and the search of his person were proper__

The trial court properly determined that the search and arrest were proper. Officer Flanery spoke with the appellant's mother at the scene. 2 RR 22-23, 55.[2] Officer Flanery testified that he and the mother talked about what precipitated her call to police: that she and the appellant had verbally argued the night before, that he had a mental illness, that he did not take his medication, that he was seen with a gun, and that the day care was just opening for the day. 2 RR 23.

Officer Flanery then walked back toward the SUV, locating the hand-rolled marijuana cigarette on the ground, which the appellant dropped as the officer applied the handcuffs. 2 RR 33-34. Officer Flanery testified that he consequently had probable cause to search the vehicle for marijuana or drug paraphernalia. 9 RR 40. As the trial court determined, "The officer had the right to conduct a cursory

---

[2] Whether the officer spoke with the mother before or after detaining the appellant is immaterial to the resolution of this appeal, and in any case, total deference is afforded to the trial court's determination of historical facts supported by the record, as well as application-of-law-to-fact questions that turn on evaluation of credibility and demeanor. *Johnson*, 68 S.W.3d at 652-53 (Tex. Crim. App. 2002). In addition, the reviewing court does not engage in its own factual review (*Romero*, 800 S.W.2d at 543), and the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony (Ross, 32 S.W.3d at 855).

search of the driver's area of the vehicle for more marijuana and the handgun the defendant's mother had alleged he might possess." CR 45-46. The search was justified by probable cause and by the *Terry* doctrine, which was expanded to include the passenger area of a subject's vehicle in *Michigan v. Long*, 463 U.S. at 1049. Officer Flanery then searched the front driver's seat area of the SUV, where he discovered a loaded .38 caliber revolver in the side panel of the front driver's side door. 2 RR 34; 9 RR 41. It contained five live rounds and one spent one. 2 RR 34; 9 RR 42.

Officer Flanery arrested the appellant and took him to Central Booking. 2 RR 36-37. Upon their arrival, Officer Flanery conducted a search incident to arrest of the appellant's person, leading to his discovery of several credit cards bearing the name *Alicia D. Otto*. 2 RR 37-38; 9 RR 53. He submitted the cards as evidence. 2 RR 38.

A. *Officer Flanery admitted that he might have been mistaken about knowing that the appellant had an outstanding warrant, but there is also evidence that there actually was a warrant*

Whether Officer Flanery determined that the appellant had outstanding arrest warrants at the time that he placed the appellant under arrest is immaterial to the resolution of this case, and the evidence about whether he was aware of a warrant is equivocal. In addition, Officer Flanery's arrest of the appellant was valid due to

the appellant's possession of marijuana, and he had the legal authority to arrest the appellant even if the appellant did not have outstanding arrest warrants.

Officer Flanery testified at the suppression hearing that he had determined that the appellant had extensive involvement with the police department, and that he had an active arrest warrant. 2 RR 32, 50-51. Officer Flanery also testified that there are two ways for officers at the scene of an incident in the field to discover whether a subject has a warrant for his arrest: by using Computer Aided Dispatch (CAD) or by calling on the radio to dispatch. 2 RR 48. A CAD search would automatically log the search, but a call to dispatch would require the dispatcher to record the details of a warrant search and any results. 2 RR 48-49. According to the CAD report, dispatch conducted the warrant search on behalf of the officers. 2 RR 49. For whatever reason, the CAD report failed to indicate the appellant's warrant information, which Officer Flanery conceded could have led him to be mistaken about remembering that the appellant had an active arrest warrant on that day. 2 RR 50. The CAD report, however, did indicate that the search for the appellant in the database happened at 8:02 a.m., and it included the appellant's full name. 2 RR 51. Therefore, it is uncertain how Officer Flanery requested the warrant information, and there is insufficient evidence to determine whether he was actually informed about any outstanding warrant. Since the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be

24

given their testimony, *State v. Ross*, 32 S.W.3d at 855, the trial court's determination that Officer Flanery's testimony was credible should be given deference.

**B.** *Officer Flanery did not contradict his own testimony regarding who saw the appellant with a gun*

The appellant states that Officer Flanery "testified that Appellant's mother (who initially called the police) said she saw Appellant with a gun." App. Br. at 7 *citing* 2 RR 18. The appellant then states that Officer Flanery "later testified that [the appellant's mother] told him 'her husband saw [Appellant] with it at her house yesterday.'" App. Br. at 7 *citing* 2 RR 57 (cited quotation corrected to reflect the record). The paraphrasing of Officer Flanery's quotation from 2 RR 18 is incorrect. What he actually testified to about his understanding of the purpose for the mother's 911 call is:

> She was concerned because it was a day care, it was a weekday, and children -- it was in the early morning so people were starting to drop off their kids, so for the welfare of the kids she wanted a basically check welfare because the last she saw her son, he had a gun, and with the gun and with the kids at the facility, she was worried about their safety.

2 RR 18. Accordingly, Officer Flanery did not actually testify that the mother saw the appellant with the gun, as the appellant alleges. Rather, Officer Flanery testified only that it was his understanding that the mother, on the last time that she saw her son, was aware that her son had a gun with him. It is understandably

25

unclear whether the mother knew this because she saw the gun or because her husband saw the gun and told her about it, and this is not an inconsistency such that it could detract from Officer Flanery's credibility.

    C. *Officer Flanery admitted that he was confused about when he personally spoke with the appellant's mother, but the timing of that conversation is immaterial to the existence of probable cause, and the court determined that Officer Flanery's overall testimony was credible*

Officer Flanery admitted that his memory did not serve him correctly about whether he spoke with the appellant's mother before or after detaining him. 2 RR 57. However, when he spoke to the mother and the fact that he misremembered when that happened have no bearing on whether the officers had cause to detain and arrest the appellant, and Officer Flanery readily admitted that he had mistaken the timing of when he spoke to the mother.

    D. *Officer Flanery misspoke or misremembered the make of the appellant's vehicle in only two instances, and the trial court determined that his overall testimony was credible*

The appellant attacks Officer Flanery's credibility with respect to him testifying in two instances that he was looking for a Suburban, when in fact the appellant was found in a Ford Explorer. App. Br. at 7. The record, however, indicates that Officer Flanery was aware on the day of the arrest that he was looking for a black SUV, possibly a Ford Explorer, and that he actually found the appellant in a black Ford Explorer.

During the pretrial suppression hearing, Officer Flanery described the

appellant's vehicle as a "black Suburban." 2 RR 20. He testified that "if my memory serves me correctly, it was a black SUV. A Suburban, I believe." 2 RR 54-55. However, Officer Flanery, responding to questions about the appellant's vehicle—described in five questions as a Ford Explorer—never responded that the vehicle was a Suburban rather than an Explorer. 2 RR 44, 59, 61, 64, 90. In fact, he testified that he had heard from dispatch that the appellant was in a black Ford Explorer. 2 RR 64. Officer Flanery obviously misspoke or misremembered when he described the appellant's vehicle as a Suburban. However, it is reasonable for an officer to misstate or misremember the make of a vehicle on a case from several months prior, and he was consistent in describing the appellant's vehicle as a black SUV. Since the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, *State v. Ross*, 32 S.W.3d at 855, the trial court's determination that Officer Flanery's testimony was credible should be given deference.

## VI. The evidence supports the trial court's determinations about the lawfulness of the appellant's detention, search, and arrest

Applying the bifurcated standard of review, the trial court's ruling on the motion to suppress should be upheld, since total deference is afforded to the trial court's determination of historical facts supported by the record, as well as application-of-law-to-fact questions that turn on evaluation of credibility and

demeanor. *See Johnson*, 68 S.W.3d at 652-53 (setting forth the applicable standard of review).

In this case, the trial court determined that the officer was justified in detaining the appellant due to concerns that the appellant was, had been, or would soon be engaged in criminal activity. The *Terry* search of the appellant's person was justified for the officer's safety and for investigative purposes. Upon determining that the appellant was in possession of marijuana, Officer Flanery had probable cause to search the appellant's vehicle, and the .38 caliber revolver was lawfully seized. Due to the marijuana, the appellant was lawfully arrested, and the search of his person pursuant to that arrest was lawful, and the court properly ruled that the additional robbery evidence then discovered was properly seized. Because the trial court's ruling on the motion to suppress evidence is correct on a theory of law, its ruling should be upheld, and the appellant's point of error should be overruled.

## PRAYER

WHEREFORE, the State requests that the Court overrule the appellant's point of error and affirm the judgment of the trial court.

Respectfully submitted,<br>
**Rosemary Lehmberg**<br>
District Attorney<br>
Travis County

Law Clerk: Micah King

*/s/ M. Scott Taliaferro*<br>
**M. Scott Taliaferro**<br>
Texas Bar No. 00785584<br>
Assistant District Attorney<br>
Director, Appellate Division<br>
District Attorney's Office<br>
P.O. Box 1748<br>
Austin, Texas 78767<br>
Phone: (512) 854-3626<br>
Fax: (512) 854-4810<br>
scott.taliaferro@traviscountytx.gov<br>
AppellateTCDA@traviscountytx.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based on the computer program used to generate this brief, that this brief contains 6,709 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count. I certify, further, that this brief is printed in a conventional, 14-point typeface except for footnotes, all of which are printed in a conventional, 12-point typeface.

*/s/ M. Scott Taliaferro*
M. Scott Taliaferro


## CERTIFICATE OF SERVICE

I hereby certify that, on the 20th day of April, 2015, the foregoing State's brief was sent, via U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the appellant's attorney, John S. Butler, Esq., 700 Lavaca Street, Suite 1400, Austin, Texas 78701.

*/s/ M. Scott Taliaferro*
M. Scott Taliaferro