

# NUMBER 13-15-00372-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                          Appellant,

v.

CARLOS CANTU,                                               Appellee.

## On appeal from the 93rd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Perkes
### Memorandum Opinion by Justice Perkes

The State appeals the trial court's granting of appellee Carlos Cantu's motion to

suppress evidence.[1]   Cantu was indicted on one count of possession of marijuana, in an

---

[1] This appeal is brought pursuant to Texas Code of Criminal Procedure article 44.01(a)(5), which authorizes the State to appeal an order of a court in a criminal case if the order . . . grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case[.]   TEX. CODE CRIM. PROC.

amount of 2,000 pounds or less but more than 50 pounds, a second-degree felony. *See*
TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West, Westlaw through 2015
R.S.).   By one issue, the State argues the trial court abused its discretion in granting
Cantu's motion to suppress because the investigator had reasonable suspicion to extend
the traffic stop.   We affirm.

## I.   BACKGROUND

Investigator Horacio Requenez received an anonymous tip that there was
suspicious vehicular traffic at a residence located at 1313 Heron, McAllen, Texas.[2]   The
residence was a known drug stash house, and previously, officers seized more than 300
kilograms of cocaine from the premises.   Investigator Requenez checked the utility bills
and found no change in ownership since the previous investigation.   Given this
information, Investigator Requenez began surveillance.   He was about eight houses
away from the residence.   After several hours of uneventful surveillance, Investigator
Requenez observed a small SUV arrive from which Cantu exited the passenger side while
carrying an empty satchel.   After approximately twenty minutes, Cantu left the residence
with the satchel full, re-entered the passenger side of the vehicle, and drove away.
Investigators Requenez and Ricardo Ruiz asked through dispatch for Officer Ramon
Garcia to stop the suspicious vehicle.

---

ANN. art. 44.01(a)(5) (West, Westlaw through 2015 R.S.).

[2] Investigator Ruiz explained that the tip came from a Pharr Police Department investigator who received information that a vehicle pulled up to the front of the residence and that two males—who did not live at the residence—opened the trunk and unloaded a heavy looking suitcase and took it into the house.

Officer Garcia observed the vehicle fail to signal a turn, and initiated a traffic stop. At the time of the stop, appellant was riding in the passenger side of the vehicle and his wife was driving. Officer Garcia took both appellant's and his wife's drivers licenses to check for outstanding warrants. Investigator Requenez also observed the traffic violation, and, based on Officer Garcia's report to them that Cruz was acting "extremely nervous," arrived at the scene. Officer Garcia found no outstanding warrants and, after speaking with Investigator Requenez, ended his involvement with the traffic stop.[3]

Investigators Requenez and Ruiz then approached the passenger side of the vehicle and began questioning Cantu about his presence at the Heron house. Cantu admitted to coming from the Heron house, but said it was his wife's friend's residence. Investigator Ruiz asked why Cantu was the only one to enter the residence if they were there to see his wife's friend. Cantu responded that he was speaking with the friend's husband, who was at the Heron house. Investigator Requenez asked Cantu about the satchel, but Cantu denied any knowledge of it. Investigator Requenez obtained oral consent to search the vehicle, and, during the search, they located a satchel under the seat. Inside the satchel were two plastic bags containing approximately $14,000 in cash. Investigator Requenez asked Cantu about the money, and Cantu replied that the money was for building a swimming pool.

After his discovery of the satchel, Investigator Requenez called for a canine unit to ascertain the presence of narcotics. The canine unit arrived five to ten minutes later and alerted to the presence of narcotics on the satchel; but it did not alert to the presence of

---

[3] The record does not reflect whether Officer Garcia issued a citation for any traffic infraction.

any additional narcotics. The investigators informed Cantu of the canine's alert on the money bag, and then placed Cantu in the back of their police cruiser. Cantu asked the officers not to arrest his wife, and then informed the investigators of approximately "a thousand pounds" of marijuana at a different location—3509 Pelican, McAllen, Texas. The Pelican address matched the address on Cantu's driver's license. The investigation then moved to the Pelican and Heron houses. The investigators received consent to search both residences by individuals at each residence. Investigators discovered marijuana at the Pelican house, and drug ledgers were discovered at the Heron house. The investigators detained Cantu for between 45 minutes and an hour while the houses were searched.

Cantu filed a motion to suppress "any and all evidence obtained . . . ." In his motion, Cantu alleged the "searches were made based on evidence obtained in violation of the laws of the State of Texas." Cantu's motion to suppress sought to exclude his statements made to police and the marijuana discovered in the Pelican house. After a hearing, the trial court granted Cantu's motion to suppress based on the alleged prolonged length of the detention after the traffic stop. This appeal ensued.

## II. PROLONGED DETENTION

The State argues the trial court erred in granting Cantu's motion to suppress. Specifically, the State alleges that two of the trial court's conclusions of law lack evidentiary support and further argues that the officers had reasonable suspicion to prolong the traffic stop.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997) (en banc). The trial court's ruling is overturned only if it is "outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We view all of the evidence in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). The trial court's role as the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony is almost totally deferential. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2008); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). "This is so because it is the trial court that observes first-hand the demeanor and appearance of a witness, as opposed to an appellate court which can read only an impersonal record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (en banc); *see Wiede*, 214 S.W.3d at 24. We give almost total deference, considered in the light most favorable to the trial court, to the trial court's findings of explicit, historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012); *see Amador*, 221 S.W.3d at 673 (citing *Guzman*, 995 S.W.2d at 89).

We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Amador*, 221 S.W.3d at 673 (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). We review the trial court's legal rulings de

5

novo unless its supported-by-the-record explicit fact findings are dispositive of the legal ruling. *State v. Kelley*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Therefore, we review de novo whether a certain set of historical facts gives rise to reasonable suspicion. *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *see Davis v. State*, 947 S.W.2d 240, 249 (Tex. Crim. App. 1997) (en banc) (Keller, J., concurring); *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007) (legal question of whether totality of circumstances is sufficient to support officer's reasonable suspicion is reviewed de novo).

## B. Applicable Law

The Fourth Amendment, made applicable to the states by the due process clause of the Fourteenth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A warrantless traffic stop is a Fourth Amendment seizure equivalent to a temporary detention, and it must therefore be justified by reasonable suspicion. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *State v. Nelson*, 228 S.W.3d 899, 902 (Tex. App.—Austin 2007, no pet.). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Garcia*, 43 S.W.3d at 530. The totality of the suspicious circumstances that an officer relies on "must be

6

sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Wade*, 422 S.W.3d at 671. We give due weight not to the officer's inchoate and unparticularized suspicion or "hunch," but to specific reasonable inferences that he was entitled to draw from the facts in light of his experience. *See Davis*, 947 S.W.2d at 242.

We analyze the legality of traffic stops under the standard articulated by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *see United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) (en banc); *see also United States v. Pack*, 612 F.3d 341, 349–50 (5th Cir. 2010); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Under this standard, we make a two-part inquiry. *Brigham*, 382 F.3d at 506. First, we examine whether or not the officer's decision to stop the vehicle was justified at its inception. *Id.* Second, we determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. *Id.*

An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupant beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops a reasonable suspicion of additional criminal activity in the meantime. *Id.* at 507. The United States Supreme Court has expressly rejected placing any rigid time limitations on *Terry* stops; instead, the issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Id.* at 64 (quoting *United State v.*

7

*Sharpe*, 470 U.S. 675, 685–86 (1985) (declining to "establish per se rule that 20-minute detention is too long" under *Terry*)). A detention may not be unnecessarily prolonged solely in hopes of finding evidence of some other crime. *Kothe*, 152 S.W.3d at 64. But if reasonable suspicion of additional criminal activity arises in the course of a stop and before the purpose of the stop is fulfilled, then a continued detention may be justified until the new suspicion has been confirmed or dispelled. *Davis*, 947 S.W.2d at 243; *see Madden*, 242 S.W.3d at 516–17 (facts determined prior to and during stop provided sufficient reasonable suspicion for continued detention).

## C.    Analysis

According to the State's first argument, the trial court abused its discretion by making conclusions of law which are unsupported by its findings of fact. The State challenges the trial court's following conclusions of law:

10. The investigators requested for the canine to arrive on scene. However, the narcotics canine did not alert to the presence of narcotics. Instead, the canine found money. The investigator's testimony was not reliable as he indicated he had seen the money in plain view and then called a canine to the location on that basis.

11. CANTU told the investigator that the money was going to be used to buy a pool. The investigator did not continue the investigation to whether the money would be used for a pool or not. The investigator assumed that the money was derived from illegal activity, which he had not seen personally. The investigator had only conducted surveillance on 1313 Heron for two hours prior to observing CANTU arrive on location.

According to the State, these conclusions are at odds with the trial court's specific findings of fact, in particular:

16. Investigator Requenez asked CANTU for permission to search the vehicle. CANTU denied signing a written consent form, but Investigator Requenez states that he gave a verbal consent. Investigator Ruiz

8

stated they asked to search the vehicle because he observed CANTU walking in and out of the 1313 Heron residence earlier with the bag.

17. Investigator Requenez searched the vehicle and found a bag underneath the passenger seat. He did not see the bag until he searched the vehicle. Investigator Ruiz stated he asked CANTU to exit the vehicle and he saw Cantu stuff the bag in plain view under his seat and Investigator Ruiz observed the money in the bag at that time. I did not find Investigator Ruiz's testimony credible in that Investigator Requenez stated that the bag of money was not discovered until the officers searched the vehicle. Further, when Investigator Requenez opened the passenger door, he testified he could not see the bag under the seat.

18. Investigator Requenez called dispatch to request a canine unit to search the vehicle. At the same time, investigator asked CANTU what the money was for.

The State contends that the record shows Investigator Requenez discovered the money prior to the canine's arrival, not the other way around. The State further complains about the trial court's ignoring the officer's discretion to decide whether or not to believe appellant's story about the purpose for the money, apparently finding fault with what the trial court's conclusion omitted rather than what it included.

In challenged conclusion of law number 10—which we construe more as a finding of fact—the trial court stated that the canine did not alert on any narcotics, but "found money." By saying the canine "found" the money, we understand that the trial court meant the canine alerted on the satchel containing the money. The trial court's next sentence is an unambiguous credibility determination concerning Investigator Ruiz. The trial court did not believe Investigator's Ruiz claims of spotting the satchel with money prior to the search of the vehicle. Such a finding is consistent with Investigator Requenez's testimony stating that he found the satchel in conducting the vehicle search.

9

We find no discrepancy between the trial court's findings of fact and the challenged conclusion of law number 10.

Challenged conclusion of law number 11—again construed as a finding of fact—is an accurate statement supported by the record. According to the record, the investigators did not investigate the truthfulness of Cantu's claims about the purpose for the money, nor did they personally witness any overtly illegal activity at the Heron house prior to Cantu's detention and arrest. That the State disputes the truthfulness of Cantu's stated purpose for the money does not impact the accuracy of the trial court's findings.

We conclude the challenged conclusions have evidentiary support and do not constitute an abuse of discretion. *See Miller,* 393 S.W.3d at 263.

The State also challenges the trial court's conclusion that the officers did not have reasonable suspicion to continue Cantu's detention past the completion of the traffic stop. In arguing the police officers acquired reasonable suspicion to extend the duration of the traffic stop, the State points to: (1) the anonymous tip of suspicious vehicular traffic at the Heron house; (2) previous known drug activity at the Heron house; (3) the residents involved in the previous drug activity lived in the Heron house at the time of Cantu's visit; (4) Cantu's possession of the satchel during his visit to the Heron house; (5) Cantu's nervousness; (6) Cantu's alleged evasive answers to police questioning; and (7) the discovery of the satchel filled with money.

Cantu's interaction with the police began with the traffic stop, initiated by Officer Garcia.[4] After he stopped Cantu's wife, Officer Garcia asked for identification from Cantu

---

[4] The parties do not dispute the legality of Officer Garcia's traffic stop. We conclude Officer Garcia had probable cause to stop the vehicle in which Cantu was a passenger. We will focus our analysis on

and his wife and checked for outstanding warrants. After finding no outstanding warrants, Officer Garcia spoke with Investigator Requenez, explaining that Cantu seemed nervous. According to the trial court's findings of fact, after speaking with Investigator Requenez, Officer Garcia ended his involvement with the traffic stop. There is no testimony in the record regarding whether Officer Garcia began writing a traffic citation while Investigator Requenez spoke with Cantu or whether a traffic citation was ever issued. Moreover, it is unclear how long Officer Garcia's investigation lasted before Investigators Requenez and Ruiz arrived. Therefore, at the conclusion of the traffic stop, Investigator Requenez knew: (1) Cantu stopped briefly at the Heron house carrying the satchel; and (2) Cantu seemed nervous in his interaction with Officer Garcia.

The facts that an officer relies on to raise suspicion that illegal conduct is afoot need not be criminal in themselves; "they may include any facts which in some measure render the likelihood of criminal conduct greater than it would otherwise be." *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013) (quoting *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991)). However, the totality of the suspicious circumstances that an officer relies upon "must be sufficiently distinguishable from that of innocent people under the same circumstances as to clearly, if not conclusively, set the suspect apart from them." *Id.* (quoting *Crockett*, 803 S.W.3d at 311).

We first examine whether Cantu's presence at the Heron house, when combined with permissible deductions, could create a legitimate basis for suspicion. See *Ford,* 158 S.W.3d at 492. According to Investigator Requenez, the Heron house was the location

---

whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused the stop. *See United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) (en banc).

of a prior drug bust resulting in the seizure of approximately three kilograms of cocaine. He did not say how long before his latest surveillance the drug bust occurred, but he did say that the house's utilities were registered in the same name as during the bust. Investigator Requenez believed the Heron house was still used for drug activity. By watching Cantu enter the house with an empty satchel and leave approximately ten minutes later with a full satchel, he linked Cantu to presumed drug activity.

The record, however, is missing any testimony articulating why Cantu's carrying a satchel into and out of the Heron house was suspicious or any testimony linking Cantu's presence at the house to previous drug activity. Instead, Investigator Requenez merely concluded that Cantu's behavior was "suspicious." An officer must do more than simply label a behavior as "suspicious" to make it so. *Wade*, 422 S.W.3d at 672 (quoting *United States v. Foster*, 634 F.3d 243, 248–49 (4th Cir. 2011)). There is nothing in the record, other than Investigator Requenez's own subjective belief, that would characterize Cantu's conduct at the Heron house as indicative of criminal activity.

Investigator Requenez testified Officer Garcia told him Cantu was acting "nervous." While nervousness is a factor, it is not particularly probative because "most citizens with nothing to hide will nonetheless manifest an understandable nervousness in the presence of the officer." *Id.* (quoting *Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984) (en banc)); *see Sieffert v. State*, 290 S.W.3d 478, 481 (Tex. App.—Amarillo 2009, no pet.).

The circumstances do not constitute specific and articulable facts—combined with rational inferences—to justify a reasonable suspicion on the part of the officers that

12

criminal activity was afoot. *See Terry,* 392 U.S. at 20; *Wade,* 422 S.W.3d at 672. Investigator Requenez does not explain his reasoning for labeling Cantu's behavior at the Heron house as "suspicious." While we acknowledge the Heron house's drug connection history, we are unable to determine the proximity of that history to Cantu's presence. Investigators Requenez and Ruiz were not justified in their continued detention of Cantu. Cantu's denial about the satchel's existence, discovery of the satchel containing money, and the canine alert on the satchel all came after Cantu's initial detention was illegally prolonged and therefore do not factor into our analysis.

We hold that the trial court did not abuse its discretion in finding the officers violated Cantu's fourth amendment rights and in suppressing all evidence deriving from the prolonged detention. *See Valtierra*, 310 S.W.3d at 447. The State's issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.


GREGORY T. PERKES
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of October, 2016.

13